The State of Connecticut *vs.* Calogero Costa.

First Judicial District, Hartford, May Term, 1920.

Prentice, C. J., Wheeler, Beach, Gager and Case, Js.

An information charged the accused in the first count with an assault
with intent "to maim or disfigure," and in the second with com-
mitting an "aggravated assault with a deadly and dangerous
weapon." There was only one assault, and a general verdict of
guilty was returned. *Held* that the trial court properly imposed a
single penalty which was appropriate to a conviction upon either
count.

It is never a sufficient reason for the exclusion of pertinent evidence,
that it may also be susceptible of a wrong and prejudicial use by
the trier.

To show a motive for assaulting one Clark, a stranger, and thus aid in
the identification of the accused as his assailant, evidence is admis-
sible that the accused had recently quarreled with a third person
by the name of Williams, and mistakenly supposed that Clark
was Williams when he assaulted the former. Such evidence does
not introduce another and distinct offense: it merely tends to
harmonize the apparent inconsistency of an assault which, if com-
mitted by the accused, was, in the absence of explanation, seemingly
without meaning or purpose.

Nor does such evidence negative or qualify the immediate purpose and
legal intent of the accused to assault Clark—the man in front of
him on the street—merely because at the time he mistakenly sup-
posed the victim to be someone else.

Argued May 4th—decided July 20th, 1920.

Information for a felonious assault with intent to
maim and disfigure, with a count for an aggravated
assault, brought to the Superior Court in Litchfield
County and tried to the jury before *Hinman, J.;* ver-
dict and judgment of guilty, and appeal by the accused.
*No error.*

The first count charged the accused with having
assaulted one Clark with a razor, with intent "to maim
or disfigure" him. The second count charged the
offense as an aggravated assault with a deadly and

dangerous weapon. General Statutes, §§ 6194, 6344.

To the information, which contained no formal prayer for process, the defendant demurred generally, that "the same is insufficient in law," and the demurrer was overruled.

The State claimed to have proved that at the time of the occurrences involved, Costa, the defendant, was employed as "helper" on a so-called slitting machine in the Brass Mill at Torrington. Williams was "helper" on an adjoining machine of the same character in charge of one Dunn. Metal for use on both machines was delivered by the same truck. On the morning of September 2d, 1919, Costa and Williams got into trouble over their work at the truck. This began by Costa's "fooling" and interfering with Williams, in which he persisted until Williams struck him in the face. Dunn separated the men, and Costa seemed angry. He left the shop and did not return that day. When Williams and Dunn, who lived in the same section, left the shop at six o'clock, Costa and three companions were standing nearby, and Costa when observed by Williams disappeared behind the others of his party. One of them carried an axe with the head wrapped in paper. They followed Williams and Dunn on the opposite side of the street, until the two men reached a spot on their way home where Williams' father was waiting for him with a team, and as Williams entered the conveyance, Costa and his friends stood watching him, and then disappeared in another direction. On September 10th following, Costa again quarreled with Williams over their work at the truck, and threatened to split his head open, adding that he did not want to fight in the shop, but that if he caught Williams outside, either he would kill Williams, or Williams would kill him. Overtime work in the Torrington mills then stopped at nine o'clock in the evening, and on the next

forenoon, September 11th, the foreman of the shop asked Dunn, in Costa's presence, who would work overtime that night. Dunn agreed to do so, and pointed to Williams who made no response. Williams did not work overtime that night, and Costa stopped work for the day at noon.

The mill of the Standard Company is about three blocks north of the Brass Mill, and Clark, the assaulted man, and one Conklin were there employed. Both worked overtime on the evening of September 11th, which was dark and rainy, and left for home after quitting work at nine o'clock. They, as well as Williams, lived in the western section of the town, and their route from work converged with his at a certain point, and from thence their course was for some distance the same as that customarily taken by Williams— westward through Church Street, and into Highland Avenue. Williams, a younger man than Clark, was about Clark's height.

After Clark and Conklin had passed this point of convergence on the night in question, and were proceeding along Church Street, they saw a man ahead of them on the same walk and going in the same direction. As the two approached a street crossing, they passed another man standing at the curb, and the man ahead passed on up a street branching to the north. This was about ten minutes after nine o'clock. Clark and Conklin's course here took them out Highland Avenue, which extended west from this point, and they had gone but a few steps along its northern walk when Clark, who was walking on the left, and outside, heard steps behind him and was almost at once struck and slashed or cut on the left cheek by a blow from behind. As he turned, he saw a man with his coat collar turned up, and wearing a cap, facing him with a razor in his uplifted hand who struck at him again, cutting the

little finger of his left hand as he tried to ward off the blow. A third blow cut his coat. The man, as Clark had turned upon him, was facing west toward an electric street light on Highland Avenue, one hundred and ninety-three feet from the corner they had just left. Clark did not then know his assailant, and had never before seen him. As Clark and Conklin started for him, another man standing on the corner they had just passed and carrying a revolver, ordered them not to move. The assailant then backed away to this man, who asked: "Did you get him?" To which the man with the razor said, "Yes, I got him good." Both then ran away.

Next day, September 12th, was pay day at the Brass Mill, and shortly before six o'clock in the evening Costa came into the mill yard and meeting an acquaintance, told him he had not worked that day but was coming for his pay. This man told Costa that he was being charged in the mill with having cut a man the night before, and Costa left without calling for his pay. On that evening Costa was brought to the police station, where he was at once identified by both Clark and Conklin as the man who had assaulted Clark the night before.

The defense was an *alibi*, Costa claiming to have proved that he was at the home of a friend a mile from the scene of the assault at the time it was committed.

The State's claim was that Costa, knowing the course that Williams customarily took on his way home from work, and believing him to have worked overtime on that evening, expected to find and intended to assault him at the time and place in question, and actually assaulted Clark in the mistaken belief that Clark was Williams.

In support of this claim, and for the purpose of supplying a motive on the part of the defendant for the attack upon Clark, the State was permitted, over

the objections of the defendant, to introduce (1) testimony as to the trouble which had occurred between Costa and Williams on the two occasions prior to the assault; (2) the statement that one of Costa's companions was carrying an axe on the afternoon that the party were observed by Williams when he left the shop; (3) the latter's testimony as to his customary course in proceeding home from his work; and (4) the shopforeman's statement to Dunn in Costa's presence relating to overtime work, The defendant excepted in each instance to the rulings.

There was no action taken by the defendant, either by motion or otherwise, to compel the State to elect upon which of the two counts it should proceed, and a general verdict of guilty was returned by the jury and accepted by the court without protest or objection by the defendant. Sentence as upon one count only was imposed, and for a term of imprisonment within the discretion of the court in dealing with the offense involved for which the statutes provide the lesser penalty—that of an aggravated assault.

The appeal assigns error in the admission of all the testimony complained of, and in the overruling of the demurrer to the information.

*Leonard J. Nickerson*, Public Defender, and *William M. Foord*, for the appellant (the accused).

*Walter Holcomb*, State's Attorney, for the appellee (the State).

CASE, J. Although nothing in prejudice of the defendant's rights is claimed to have resulted from the acceptance of a general verdict, the situation has been somewhat pointedly brought to our attention, and perhaps calls for a word of comment. As the information is drawn, all that substantially differen-

tiates the two distinct offenses charged, is the element in the graver of them of a specific intent to maim or disfigure the victim of the attack. The State's claims of proof, as detailed in the finding, are equally consistent with guilt on either count. It was readily within the right of the jury to find that the weapon involved was a deadly or dangerous one in its adapted use, and that its active presence in the case made the assault an aggravated one (§ 6344); while the character and location of Clark's wound, inflicted as it was without chance for his resistance and where his assailant deliberately chose to place it, satisfies the precise requirements of the statute and justifies the inference of the necessary "intent to maim or disfigure." § 6194. While the offenses charged are separate, therefore, and brought under different statutes, they present alternative aspects of a single transaction, and their only essential difference is one of degree. The court fully recognized this fact and properly acted upon it by the imposition of a single penalty which was appropriate to a conviction upon either count.

Neither of the two main objections to the evidence of Costa's relations with Williams is sound. The fallacy of the first lies in the defendant's assumption that the evidence brought before the jury another and distinct offense wholly disconnected with the charge covered by the information, and in violation of the familiar rule of exclusion voiced by the cases upon which he relies.

This is not true, and the cases referred to (*State* v. *Gilligan*, 92 Conn. 526, 530, 103 Atl. 649, and *People* v. *Molineux*, 168 N. Y. 264, 273, 61 N. E. 286) are without pertinence to the situation presented by the record. There is but one offense involved here, and that is the actual attack upon Clark. As having a possible tendency to weaken or offset the identification of Costa as the man who perpetrated it, were Clark's concurrent

statement that he had never seen the man before the assault, and the further fact—suggestive when considered in connection with all that Clark's disavowal perhaps implied—that every intelligible motive but that of personal hatred or revenge was practically eliminated from the case by its attendant circumstances. In this situation it was not only the State's right, but its manifest duty, to harmonize if it could the apparent inconsistency of Costa's identity as the assailant, with an assault which if committed by him was in the absence of further explanation seemingly without meaning or purpose.

The question of identity was thus made to depend vitally upon the disclosure of a motive, and, as meeting this requirement, it was pertinent for the State to show that while there was on the surface no discoverable purpose in Costa's assaulting Clark, there was ground for inferring his purpose to assault another man, for whom, by a chain of confusing coincidences, he had momentarily mistaken Clark. When for these reasons Costa's claimed concurrent hostility toward Williams became a legitimate element of the State's case, its recognition as such opened the door for the reception of any evidence competent to establish it, and proof of recent quarrels and resulting bad blood was very plainly of this character. That it was possible for the jury to misconceive its legitimate purpose and give it an unwarranted significance in support of the State's charge, is not important, if true. It is never a sufficient reason for the exclusion of pertinent evidence that it may be also susceptible of a wrong and prejudicial use by the trier. One of the important functions of the court is to safeguard an accused person against such possibilities by sufficient instructions to the jury. The record warrants no suggestion that the duty was not amply and satisfactorily performed in this case.

The second objection urged by the defendant is that evidence of a purpose to assault Williams has no legitimate tendency to establish the express charge laid in the information, of an intent to assault Clark.

We cannot sustain this contention. The information accurately presented a charge which the evidence tended directly to substantiate. It in no sense negatived or qualified the immediate purpose and legal intent of Clark's assailant to assault Clark, that the act may have rested wholly upon a mistaken belief as to Clark's identity. The purpose of the assailant was to accomplish the end immediately in view, and the actual victim was no less the intended direct physical object of the attack, because at the time he may have been taken for someone else. Whatever lack of entire accord the cases may show, we think by far the better rule and reason are succinctly given in the illustration used by Wharton, who says: "A third contingency arises when A, looking out for B, sees C, whom he mistakes for B, and whom he kills. This is murder, because his intent to kill, however mistaken his reasoning, was really pointed at C." 1 Wharton, Criminal Law (11th Ed.) p. 204. See also *Dunaway* v. *The People*, 110 Ill. 333, 337. No requirement of criminal pleading compels the prosecutor to embody in his formal charge the details of a confused mental process by which the accused reached the alleged result.

The demurrer to the information was properly overruled. With the charge unequivocally laid in the information, its formal presentation to the court implied its purpose as unmistakably as though the perfunctory request which it omitted had been included.

There is no error.

In this opinion the other judges concurred.