## STATE OF CONNECTICUT *v.* RAYMOND E. HOYESON

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued November 3—decided December 8, 1966

*Samuel H. Woltch,* special public defender, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

KING, C. J. The information charged the defendant in the first count with rape (General Statutes § 53-238); in the second count with burglary with personal violence (§ 53-69); and in the third count with assault with intent to murder (§ 53-12). He was tried to the jury on the second and third counts only. On the second count he was convicted of the crime therein charged, and on the third count he was convicted of the included, but lesser, crime of aggravated assault (§ 53-16). See cases such as *State* v. *Mele,* 140 Conn. 398, 402, 100 A.2d 570; *State* v. *Pallanck,* 146 Conn. 527, 529, 152 A.2d 633. Thereafter, the first count was nolled.

In his appeal from his conviction, the defendant claims, as to the second, and also the third, count, that the court erred in denying his motion to set aside the verdict as unsupported by the evidence, and that the court erred in four rulings on evidence. A claim for certain corrections of the finding need not be separately discussed since its subject matter is necessarily embraced in the claim as to the inadequacy of the evidence to support a conviction under either count.

The state offered evidence from which the jury

could properly find that the defendant, during the night of October 26 and 27, 1964, with two comrades, Richard Ryan and Roy Spencer, went to the rear yard of the residence of a Dr. Coler, in Bridgeport, after all the lights were out in the Coler house; that the defendant had told Spencer that he wanted to see a girl; that Ryan and the defendant opened a window having an inside screen; that Ryan heard the screen being cut and then saw Spencer boost the defendant through the window; that Spencer and Ryan then went to the rear of the house; and that a few minutes later the defendant came running out of the back door and told Spencer he had just stabbed someone inside.

There was evidence that the defendant had expressed ill will toward, and an intention to "get", a girl named Lucy because she had told the defendant's mother that the defendant had raped her; that for about a year Lucy had occupied, as the defendant knew, a particular bedroom on the second floor of the Coler house; that some weeks before the night in question Lucy had moved to another room on the third floor of the same house and thereafter Norman Moskowitz, a student at the University of Bridgeport, had occupied Lucy's former room; that on the night in question the defendant had broken into the house; and that, about 3 o'clock in the morning, Moskowitz was awakened in the darkness by an unknown assailant who slashed and stabbed him with a knife or other sharp instrument, inflicting severe wounds, and who then fled from the room down the back stairs near the rear door.

It was the state's claim that the defendant had slashed and stabbed Moskowitz thinking that he was Lucy, and, in support of this claim, the state

offered evidence of admissions which the defendant had made to fellow inmates in the jail that he had stabbed a boy thinking he was a girl whom the defendant knew and disliked. The case thus bore a considerable similarity to *State* v. *Costa,* 95 Conn. 140, 145, 110 A. 875.

## I

The defendant's claims as to the insufficiency of the evidence are based on three main grounds.

The first ground is that Spencer and Ryan testified that the defendant's breaking and entering was before eleven in the evening, whereas the state's evidence was that the assault on Moskowitz took place about 3 o'clock in the morning. It is elementary that a trier, whether court or jury, is entitled to credit some portions of a witness' testimony and discredit other portions. *Desmarais* v. *Pinto,* 147 Conn. 109, 111, 157 A.2d 596; *Rickert* v. *Fraser,* 152 Conn. 678, 681, 211 A.2d 702.

The rule often becomes applicable where, as here, the testimony in question comes from a witness who is a friend of the accused and presumably is interested in his welfare. It is obvious that the jury credited the basic testimony of Ryan and Spencer but rejected their testimony as to the hour when the entry took place. Moskowitz' testimony abundantly supported the state's claim that the assault took place a little after 3 o'clock in the morning. The time of entry was further supported by testimony of Dr. Coler that, before he went to bed, between 11 and 11:30 p.m., all the doors and windows were closed, although after the assault the window screen was found cut and the rear door open.

The second ground is that the state did not prove

that the defendant made the assault on Moskowitz because it failed to produce any knife or other instrument capable of inflicting the wounds which Moskowitz received. This claim is based on medical testimony of a Dr. Carlos Peranta that most, although not all, of the wounds were parallel and that the parallel wounds were probably made by a two-pronged instrument such as a scissors.

Ryan testified that on the following day the defendant told him that he had buried the knife which he had had that night. The state did offer evidence that the defendant had had a single-bladed knife in his possession on the night in question, but of course this evidence did not prove that he had no other cutting instrument. Any uncertainties which there might be as to the actual instrument or instruments used would not be fatal to the state's case in the light of the admissions of the defendant to Spencer and later, in jail, to Charles Johnson and Joseph Harris that he had stabbed a boy thinking he was a girl who had told his mother he had raped her. The evidence warranted the jury in deciding that the defendant had perpetrated the assault on Moskowitz.

There was adequate evidence of the breaking and entering, and the vicious slashing and stabbing constituted ample evidence of the requisite felonious intent. Thus, the defendant's final ground for setting aside the verdict, that there was insufficient evidence that the defendant committed a felony or any other crime after his entry into the house, is without merit.

## II

There remain for consideration the claims as to four rulings on evidence.

The state called Lucy as a witness, and, over objection and exception, she was allowed to testify that the defendant had raped her in the Coler garage, in back of the house, on December 6, 1963.

The state also called as a witness Barry Riley, a friend of the defendant, and, over objection and exception, Riley was permitted to testify that in April, 1964, the defendant stated that he was going to "get" Lucy because she had told his mother about the incident of December 6.

It is not essential that the state prove a motive for a crime. *State* v. *Cianflone,* 98 Conn. 454, 465, 120 A. 347. But it strengthens its case when an adequate motive can be shown. That is especially so in a case such as this, where the state claimed a vicious assault on Moskowitz, who, as far as appears, was a total stranger to the defendant. Under the two rulings, evidence was admitted tending to prove hostility toward Lucy and a motive for the assault. This evidence was relevant in connection with the evidence from which the jury could infer that the defendant, in the darkness of the bedroom, mistook Moskowitz for Lucy and committed the assault because of that mistake in identity. Similar evidence was held admissible in a basically similar case which also involved a mistake in the identity of the victim of a violent assault. *State* v. *Costa,* 95 Conn. 140, 145, 110 A. 875. It seems to be the general rule, even where there is no mistake in identity, that evidence of hostility and motive is admissible. 1 Wharton, Criminal Evidence (12th Ed.) §§ 170, 173. The fact that the evidence also tended to prove the defendant guilty of the crime of rape did not, as claimed by the defendant, render it inadmissible where, as here, it was relevant to the state's proof of the crimes

charged. Furthermore, the defendant was entitled to, and was given, a charge safeguarding him from misuse of the evidence by the jury. *State* v. *Palko,* 122 Conn. 529, 537, 191 A. 320; *State* v. *Costa,* supra, 146; see also *State* v. *Chapman,* 103 Conn. 453, 481, 130 A. 899; *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649; cf. *State* v. *Camera,* 132 Conn. 247, 251, 43 A.2d 664.

Evidence that Lucy, subsequent to the date of the threat to which Riley testified, had been in the defendant's company on an apparently friendly basis did not, as the defendant claimed, render evidence of the threat inadmissible although it did affect its weight. Nor was the threat so remote in time from the date of the assault that the court, under the circumstances, abused its discretion in admitting the evidence. The test of remoteness involves much more than the mere lapse of time. *State* v. *Sebastian,* 81 Conn. 1, 4, 69 A. 1054. There was no error in either of the foregoing evidential rulings.

The state called as a witness Anthony Matterazzo, a student at the University of Bridgeport, and, over the objection and exception of the defendant, was permitted to elicit from Matterazzo that, at about 9 o'clock on the evening in question, the defendant, at a location in the general area of the Coler house, attempted to rob Matterazzo and threatened him with a single-bladed knife.

It was relevant to the state's case to prove that the defendant was in the general area on the evening in question and that he then had a weapon capable of stabbing and slashing a person. This made the evidence admissible, under the rule just discussed, even though it incidentally tended to show the commission of another crime.

The state offered evidence through the witness Ryan, which was admitted without objection, that the defendant, Spencer and Ryan, shortly after 9 o'clock on the evening in question, had spent about half an hour rifling parked cars around the University of Bridgeport, which was in the general area of the Coler house. Thereupon Ryan was asked what they took. The court, over objection and exception, admitted the question. The finding indicates that the answer was that the three rifled parked cars. That answer added nothing to what had already been elicited without objection, and the ruling was necessarily harmless.

There is no error.

In this opinion the other judges concurred.