STATE of Maine,

v.

Regina DOUGHTY.

Supreme Judicial Court of Maine.

April 3, 1979.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Asst. Dist. Atty., Portland, for plaintiff.

Wilson, Steinfeld, Murrell, Barton & Lane by Paul Aranson (orally), Thomas P. Wilson, Portland, for defendant.

Before McKUSICK, C. J., POMEROY, ARCHIBALD, DELAHANTY, GODFREY and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.[1]

Regina Doughty (defendant) appeals from a judgment of conviction entered March 17, 1978 upon a jury verdict finding her guilty of perjury under 17–A M.R.S.A., § 451(1)(A).[2] We deny her appeal.

The perjury indictment charged the defendant with making a material false statement under oath in the course of a criminal prosecution against one Robert Kennedy in which the State sought to prove that said Kennedy had committed a simple assault against Mrs. Doughty. The defendant claims that there was error in her trial for perjury, because the presiding Justice 1) admitted evidence over her objection that at the time of the Kennedy trial she had hired an attorney who was present in court taking notes; 2) the Justice failed sua sponte to instruct the jury respecting the particular purpose for which such evidence could be considered, and 3) he denied her motion for judgment of acquittal based on the alleged insufficiency of the evidence to support the jury verdict.

### Facts

The record in the instant case discloses the following undisputed facts. A heavy snow storm hit the City of Portland during the second week-end of January, 1977. It did not abate until late evening on Monday, January 10th. Robert Kennedy, maintenance employee of Auburn Terrace, the apartment complex at 113 Auburn Terrace in Portland in which Mrs. Doughty lived at

---

1. Sitting by assignment.

2. 17–A M.R.S.A., § 451(1)(A) provides:

"1. A person is guilty of perjury if he makes:

A. In any official proceeding, a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true; or . . . .."

the time, had started to remove snow from the parking lot serving the residents of the multiple housing units including Mrs. Doughty's. The other tenants were moving their cars to another part of the lot to facilitate the snow removal, but the defendant, though requested to do so, refused. Contrariwise, she did emerge from her apartment and stood alongside her car, engaging in a heated exchange with other residents of the Terrace who had gathered near the parking lot. "Egged on" by the other occupants, Kennedy ordered Mrs. Doughty to move her car, threatening, by Kennedy's own account, to "plow the snow right up around her belly." Kennedy made two "passes" at Doughty with the plow, each time stopping short of her, so the witnesses except the defendant herself testified. Kennedy then left the area without plowing the parking space occupied by the Doughty vehicle which she had refused to move.

On January 19, 1977 Mrs. Doughty contacted District Attorney Henry Berry respecting her confrontation with Kennedy. After interviewing her and causing her to make her complaint against Kennedy under oath, District Attorney Berry then authorized the issuance of an official complaint for criminal assault against Kennedy. At the Kennedy trial, Mrs. Doughty testified, as the State's chief witness, that her leg had been injured by snow pushed upon her with the plow by Kennedy.

Indicted for perjury,[3] Mrs. Doughty was tried by jury in the Superior Court (Cumberland County) and convicted of the charge. The Court sentenced her to prison for a term of two years, but placed her on immediate probation. As indicated previously, she appeals from the judgment of conviction on the three stated grounds

which we will now discuss in their respective turn.

I

Initially, the defendant claims that it was error by the Superior Court Justice to admit in evidence over her objection the fact that, prior to the Kennedy trial, she had hired an attorney who was present taking notes at that trial. She argues that the evidence was irrelevant and, even if relevant, its prejudicial impact outweighed its probative value. We note that such evidence was introduced in the case originally through the testimony of District Attorney Berry before Mrs. Doughty gave testimony in her own defense, but again was explored in the course of the cross-examination of the defendant.

■ Evidence which has any rational tendency to prove or disprove a factual issue in the case, whether such evidence be immediate and direct or indirect and circumstantial, is relevant and should be admissible unless its admissibility is limited by constitutional requirements or is otherwise precluded by statutory mandate, some specific rule of the Maine Rules of Evidence, or other applicable rule well established in the courts of this State. Rules 401–402, M.R. Evid. See *State v. Brown*, Me., 321 A.2d 478, 482 (1974), and cases cited; *State v. Fitzherbert*, Me., 249 A.2d 760, 762 (1969).

■ Testimonial evidence having a tendency to establish the probability or improbability of a fact in issue cannot be excluded as irrelevant automatically, even though the effective impact of such evidence may be somewhat remote. See *State v. Smith*, 140 Me. 255, 278, 37 A.2d 246 (1944); *State v. Witham*, 72 Me. 531, 537 (1881).

---

**3.** The perjury indictment read in pertinent part as follows:

"That on or about the twenty-ninth day of March, 1977, in the City of Portland, County of Cumberland and State of Maine, the above named REGINA DOUGHTY did, in an official proceeding, namely a Criminal Assault Trial before the State of Maine District Court, Ninth District, Division of Southern Cumberland, in the case of the *State of Maine v. Robert Kenne-*

dy, Criminal Docket # 13822/76–77, make a material false statement under oath, to wit: that said Robert Kennedy had assaulted her by driving a snow plow truck toward her and pushing a load of snow toward her so that he struck her with the load of snow, the said REGINA DOUGHTY not believing the statement to be true, and the said statement being material because it tended to prove the guilt of the said Robert Kennedy for the crime alleged."

■ Relevancy of evidence is dependent upon its probative value respecting a fact in issue in the particular circumstances developed at trial and the initial determination of relevancy must necessarily rest largely in the sound discretion of the presiding justice as of the time such evidence is offered. *Eaton v. Sontag*, Me., 387 A.2d 33, 38 (1978) and cases cited.

■■ Furthermore, as provided by Rule 403, M.R.Evid., relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The application of the rule concerning any of the stated considerations of exclusion must rest with the exercise of a sound judicial discretion on the part of the presiding justice. See *State v. Dodge*, Me., 397 A.2d 588 (1979). In evaluating the impact for prejudice upon the jury which any evidence might present, the discretion allowed the trial justice is of broad range. *State v. McDonough*, Me., 350 A.2d 556, 563 (1976); *State v. Gagne*, Me., 343 A.2d 186, 196 (1975).

In *Eaton v. Sontag*, supra, at page 39, we cited with approval the rule in *State v. Mathis*, 47 N.J. 455, 221 A.2d 529, 538 (1966), to the effect that "[g]enerally speaking, there must be something more than mere poverty of an accused to tie him to criminal activity," and, in the application of the rule, we said

> "the mere fact that the plaintiffs may have been embarrassed financially by reason of their monetary overextension in the development of the project, without proof of some other circumstance of colorable or deceitful conduct, did not justify the Sontags' ex post facto suspicion that, to improve their financial condition, the Eatons were motivated by dishonest design and did perpetrate a double-cross on friends of fifteen years standing."

Thus, a mere general potential of monetary gain which may accrue to a person hiring an attorney, as in the case of the financial status of parties, without more might possibly be so devoid of probative value of the existence of a corrupt motive to testify falsely as to render the same inadmissible. We recognized as much, when we stated in *State v. Kouzounas*, 137 Me. 198, 17 A.2d 147 (1941), an arson case:

> "While mere consultation with an attorney is not sufficient to show an improper motive or practice, yet it may take place under circumstances that would warrant a jury in finding the act as conduct indicative of guilt."

■ The general rule is that the pendency of a civil action brought against an accused by a witness in a criminal case is admissible as tending to show interest and bias of the witness to prove a motive to falsify, exaggerate or minimize on his part, in other words, to support a claim that such witness' testimony may be false or inaccurate, intentionally or otherwise. Such evidence may be introduced in cross-examination. *Malone v. State*, 358 So.2d 490 (Ala. Cr.App.1978); *People v. Johnston*, 76 Mich. App. 332, 256 N.W.2d 782 (1977); *Cox v. State*, 523 S.W.2d 695 (Tex.Cr.App.1975); *State v. Williams*, 16 N.J.Super. 372, 84 A.2d 756 (1951); *Commonwealth v. Marcellino*, 271 Mass. 325, 171 N.E. 451 (1930). Such evidence may be shown by the testimony of other witnesses. *Lane v. Commonwealth*, 190 Va. 58, 55 S.E.2d 450 (1949); *Cabel v. State*, 18 Ala.App. 557, 93 So. 260 (1922).

■ The rule has been extended to the situation where no civil action has been commenced, but such a suit is or may be contemplated, as in the case of consultation with, or the hiring of, an attorney. *State v. Kouzounas*, 137 Me. 198, 17 A.2d 147 (1941); *State v. White*, 286 N.C. 395, 211 S.E.2d 445 (1975); *State v. Hart*, 239 N.C. 709, 80 S.E.2d 901 (1954); *Villaroman v. United States*, 87 U.S.App.D.C. 240, 184 F.2d 261 (1950), 21 A.L.R.2d 1074; *Ferguson Seed Farms v. McMillan*, 18 S.W.2d 595 (Tex. 1929), 63 A.L.R. 1009; *State v. McLemore*, 99 Kan. 777, 164 P. 161 (1917); *State v. Decker*, 161 Mo.App. 396, 143 S.W. 544 (1912).

The intent of a person to realize a monetary gain out of an incident which has become the subject of litigation, as may be evidenced by the pendency of a civil action for damages or by anticipatory preparation therefor through lawyer consultation or hiring, is an individualized fact having a logical tendency to show bias against the other party to the reference litigation, hostility to his cause and an interest adverse to him in the outcome of the legal dispute. Facts showing that the State's prosecuting witness may have been actuated by personal considerations instead of altruistic interest generated solely from motives in the public interest to bring a criminal to justice, especially, as in the instant case, when conjoined with Mrs. Doughty's seemingly unjustified show of defiance and hostility toward Kennedy in her refusal to move her automobile to permit snow removal of the area, may be viewed as having some probative value in proof not only of such bias and hostility, but also of a motive to give false testimony. See *People v. Field*, 290 Mich. 173, 287 N.W. 422 (1939).

■ Evidence of bias, hostility and personal interest of a witness may be shown by the introduction of independent evidence to that effect, and is not limited to cross-examination of the witness, and no preliminary foundation need be laid for its admissibility. This follows the long standing practice in this State that a witness' testimony may be impeached through testimonial evidence of another witness indicating bias or interest of the witness being impeached without first interrogating the reference witness regarding the impeaching matter. *State v. Pullen*, Me., 266 A.2d 222, 225–226 (1970), and cases cited. Cf. *State v. Pinnette*, Me., 340 A.2d 17 (1975); *State v. Dyer*, Me., 289 A.2d 693 (1972). See also *Littlefield v. Cook*, 112 Me. 551, 555, 92 A. 787, 789 (1915); *Blanco v. State*, 353 So.2d 602 (Fla.App.1977); *People v. James*, 56 Cal.App.3d 876, 128 Cal.Rptr. 733 (1976); *State v. Mahmood*, 158 Conn. 536, 265 A.2d 83 (1969); *Frierson v. Hines*, 426 P.2d 362 (Okl.1967); *State v. White*, 58 N.M. 324, 270 P.2d 727 (1954); *Greatreaks v. United States*, 211 F.2d 674, 14 Alaska 610 (9th Cir.

1954); *Ewing v. United States*, 77 U.S.App. D.C. 14, 21, 135 F.2d 633, 640, cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1942).

■ We are aware that Rule 608(b) provides that

"[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

The stated exclusion was not meant to reach extrinsic evidence of specific instances of prior conduct for the purpose of showing a particular bias of the witness in the current litigation.

■ As stated in *State v. Brown*, Me., 321 A.2d 478, 482 (1974), "[b]ias may be shown by developing particular facts which are sufficient to provide an intelligent understanding of the witness' particular interest in the prosecution at hand and the resulting potential for partiality in his testimony." What the rule proscribes is the attempt through extrinsic evidence of specific acts of misconduct to prove the witness' *general* unreliability for truth and veracity, as distinguished from the showing by the testimony of other witnesses of specific instances of conduct which demonstrate a particular bias of the witness in connection with the litigation wherein he testifies, such a particular bias as may tend to establish a motive to falsify. See also *State v. Lovato*, 91 N.M. 712, 580 P.2d 138 (1978), cert. denied 91 N.M. 751, 580 P.2d 972; *Foster v. United States*, 282 F.2d 222 (10th Cir. 1960).

■ The rule is well expressed in *United States v. Lester*, 248 F.2d 329 (2nd Cir. 1957) at page 334:

"Although a party may not cross-examine a witness on collateral matters in order to show that he is *generally* unworthy of belief and may not introduce extrinsic evidence for that purpose (other than records of certain convictions), 3 Wigmore, Evidence § 977 et seq., a party is not so limited in showing that the witness had a motive to falsify the testimony he has given." (Emphasis supplied)

\* \* \* \* \* \*

"The above examples, which make plain the distinction between attacking credibility *in general* and showing a motive to falsify testimony as to a *particular matter*, are by no means exhaustive." (Emphasis added)

\* \* \* \* \* \*

" 'Extrinsic testimony, or that elicited by cross examination to show the bias or interest of a witness in a cause, covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. Wigmore on Evidence, 3d Ed., §§ 948–949. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only.' "

■ Evidence having some rational tendency to establish a motive for the commission of the crime charged, such as animosity, revenge, monetary profit, is admissible, whether such evidence is introduced on cross-examination of the accused or through the testimony of other witnesses, subject to judicial discretionary control. See *State v. Tibbetts*, Me., 299 A.2d 883 (1973); *Commonwealth v. Faison*, 437 Pa. 432, 264 A.2d 394 (1970); *State v. Hoyeson*, 154 Conn. 302, 224 A.2d 735 (1966); *State v. Rogers*, 19 N.J. 218, 116 A.2d 37 (1955).

The defendant, however, asserts that, pursuant to Rule 403, M.R.Evid., the evidence of her consultation with a private attorney prior to the Kennedy trial should have been excluded on the ground that its value as supportive proof of her giving false testimony at that trial was substantially outweighed by the danger of unfair jury prejudice against her, since the possible resulting conviction of Kennedy for simple criminal assault could not be used in any subsequent civil proceeding she might later bring against him.

■ We recognize that a conviction for simple assault does not involve a crime carrying a penalty of imprisonment for one year or more. Whether such a conviction can be said to be for a crime involving dishonesty under Rule 609(a), M.R.Evid., so that evidence of such conviction could be introduced if Kennedy testified in his own behalf, should Mrs. Doughty seek civil damages against him, we need not decide.[4] Even though a conviction of simple assault might not be available to deter Kennedy from testifying in any civil action for damages which the defendant might later commence against him or his employer, nevertheless, a successful prosecution of the criminal assault case could very well increase Doughty's chance of obtaining some settlement of the alleged injury which she received in the incident, including the stated medical costs to which she testified at the perjury trial. The Justice below thought the defendant's conduct in securing the services of a private attorney in connection with the Kennedy trial, viewed in the light of her previous intransigent stance on the occasion of the snow removal incident, had probative value to show a motive in support of the State's contention that she testified falsely at the Kennedy trial, as well as to discredit her testimony at the perjury trial. We cannot say that he was clearly wrong, nor that such evidence would so unduly prejudice the jury against Mrs. Doughty that she could not receive a fair trial.

---

4. But see:

*People v. Lewis*, 51 Ill.App.3d 109, 9 Ill.Dec. 189, 366 N.E.2d 446 (1977); *Durant v. United States*, 292 A.2d 157 (D.C.App.1972); *Jenkins v. United States*, 260 A.2d 677 (D.C.App.1970).

The rationale behind the federal rule, which is similar to ours, may be seen in *United States v. Ashley*, 569 F.2d 975 (5th Cir. 1978); *United States v. Ortega*, 561 F.2d 803 (9th Cir. 1977).

Hence, there was no error in allowing such evidence, either to prove motive to testify falsely at the Kennedy trial or to discredit Mrs. Doughty's testimony in the perjury prosecution. See *State v. Borrell*, 18 N.J. 16, 112 A.2d 548 (1955).

## II

The defendant argues that it was error for the Justice below not to instruct the jury respecting the particular purpose for which such evidence could be considered by them in their deliberations. We note that no request to that effect was made at the trial, but this alleged error is suggested for the first time at the appellate level.

 Where the defendant failed to raise any objection to the instructions given to the jury by the presiding justice and no request was made at trial for more particularized instructions respecting specific portions of the evidence, the omission so to charge cannot be assigned as error as such for the first time on appeal. Rule 30(b), M.R.Crim.P. In such circumstances, the Law Court's review of the record will be confined to a determination of the question, whether the omission of the reference information, when viewed with the charge as a whole, constituted highly prejudicial error tending to produce manifest injustice, i. e. so tainted the proceeding as virtually to deprive the aggrieved party of a fair trial. *State v. Scott*, Me., 343 A.2d 177, 178 (1975); *State v. Brown*, Me., 302 A.2d 322, 324 (1973); *State v. Small*, Me., 267 A.2d 912, 916 (1970). In the instant case there is no showing of either error or prejudice to the defendant.

## III

Finally, the defendant contends that the presiding Justice erred in denying her motion for judgment of acquittal made at the close of all the evidence on the ground that the evidence was insufficient to support the jury verdict of guilty.

 In assessing the propriety of a challenge to the sufficiency of the evidence to support a conviction in a criminal case, we must determine "whether there was credible evidence from which the jury would be justified in believing beyond a reasonable doubt that the defendant was guilty" as charged. *State v. McFarland*, Me., 369 A.2d 227 (1977); *State v. Cedre*, Me., 314 A.2d 790, 793 (1974).

 The crime of perjury, insofar as pertinent to this case, consisted in the making by the defendant of a false material statement under oath in an official judicial proceeding while not believing the statement to be true. The defendant's subjective state of mind of disbelief of the truth of the statements which she made under oath at the Kennedy trial was provable by circumstantial evidence. See *Behrle v. United States*, 69 App.D.C. 304, 100 F.2d 714 (1938).

In *United States v. Magin*, 280 F.2d 74, 78 (7th Cir. 1960), cert. denied, 364 U.S. 914, 81 S.Ct. 271, 5 L.Ed.2d 228, the Court said:

> "Defendant insists that in no case can there be a conviction of perjury if circumstantial evidence is necessary to establish the intent and belief of the accused at the time he testified under oath. We think, however, that strong and convincing circumstantial evidence may prove the intent to falsify just as circumstantial evidence can be used in other criminal cases to establish guilt of an accused beyond a reasonable doubt."

To the same effect. *United States v. Rivera*, 448 F.2d 757 (7th Cir. 1971).

 A conviction based on circumstantial evidence is not for that reason any less conclusive. *State v. Stewart*, Me., 330 A.2d 800, 802 (1975); *State v. Cloutier*, 134 Me. 269, 186 A. 604 (1936).

 In determining the sufficiency of the evidence to compel belief beyond a reasonable doubt, we must keep in mind that it is the exclusive province of the fact finder, here the jury, to decide what credence should be given to the various witnesses and their testimony. *State v. Mann*, Me., 361 A.2d 897, 907 (1976); *State v. Trask*, Me., 223 A.2d 823, 824 (1966); *State v. Miller*, Me., 252 A.2d 321, 326 (1969).

The State presented four witnesses who testified that Mrs. Doughty was not touched by snow pushed by Kennedy's plow. Two of the defendant's witnesses could not testify that snow pushed by Kennedy's plow had touched her leg. Her eleven year old son who witnessed the incident from the window of her apartment merely stated that "he [meaning Kennedy] went towards my mother and he plowed the snow and pushed her back," that the snow "didn't knock her down; it just pushed her back." Obviously, this testimony was interpreted by the jury to mean, and justifiably so, that Mrs. Doughty backed away from the oncoming snow swell, especially since the young lad never did testify that his mother's clothing was all snow-covered when she came in some five minutes following the incident, nor did he mention anything about the condition of her garments. The animosity which this record reveals existed between the defendant and some of the other tenants of Auburn Terrace, when viewed in connection with her hiring a private attorney in relation to the criminal prosecution of Kennedy, was a factor to be considered by the jury in the State's proof that at the Kennedy trial Mrs. Doughty made material false statements under oath, while not believing the statements to be true.

There was no error in denying the defendant's motion for judgment of acquittal.

Therefore, the entry will be:

Appeal denied.

Judgment affirmed.

WERNICK and NICHOLS, JJ., did not sit.