**STATE of Maine**

v.

**George BENNETT.**

Supreme Judicial Court of Maine.

Argued June 17, 1980.

Decided July 11, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Barbara J. Mantegani, orally, Stephanie Anderson, Law Student Interns, for plaintiff.

Nisbet, MacNichol & Ludwig, Francis M. Jackson, South Portland, orally, for defendant.

Before McKUSICK, C. J., and WERNICK, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Defendant appeals from a judgment of conviction for aggravated assault, 17–A M.R.S.A. § 208(1)(B) and (C) (Supp.1978), and criminal threatening with the use of a dangerous weapon, *id.* §§ 209(1), 1252(4), entered upon a jury verdict in the Superior Court (Cumberland County). Defendant

alleges error in the court's exclusion of two items of proffered testimony, its refusal to give three requested instructions, and its handling of an alleged violation of a sequestration order. Finding no reversible error in defendant's trial, we affirm the convictions.

### Facts

Count I of the indictment charged that defendant George Bennett recklessly caused bodily injury to Ms. Terry Moore "(a) with the use of a dangerous weapon, namely, a knife, and (b) under circumstances manifesting extreme indifference to the value of human life." Count II charged that defendant, while using a knife and standing a few feet from Kevin Bamford, knowingly placed Kevin Bamford in fear of imminent bodily injury. The jury would have been warranted in finding the following facts. Defendant and Ms. Moore had been living together for some five years. Two weeks prior to the incident involved in the indictment, Ms. Moore and defendant broke off their relationship; Ms. Moore remained in her trailer home in Brunswick with the couple's four-year-old child and defendant moved to Auburn. On the evening of January 19, 1979, Ms. Moore went to a nightclub in Brunswick. While she was out defendant tried unsuccessfully to reach her on the telephone. Sometime after midnight Ms. Moore returned to her trailer with Kevin Bamford, whom she had met at the nightclub. When defendant called again at 1:30 a. m., Ms. Moore picked up the telephone receiver but, saying nothing to defendant, she merely listened to him talk for a few moments and then hung up.

At about 3:30 that morning, when Ms. Moore and Bamford were asleep in her bedroom, defendant arrived and entered the trailer. Defendant grabbed a knife from the kitchen, turned on the light in the bedroom, and stood alongside the sleeping couple, who quickly became aware of his presence. While standing a few feet from Bamford and holding the kitchen knife in his right hand, defendant told Bamford that "he was going to kill [him] and spread [his] guts all over the room." Defendant then

"came at" Bamford with the knife. Ms. Moore screamed, telling defendant to stop. Defendant immediately went over to Ms. Moore and slapped her face with the hand that was holding the knife, cutting her above the cheek. He turned toward Bamford and again threatened to kill him. Ms. Moore again screamed to defendant to stop; defendant slapped her in the face a second time, producing another cut. Bamford hurriedly grabbed some clothing, left the trailer, drove home, and called the police. Meanwhile, defendant had retreated into the hallway of the trailer and was no longer armed with the knife. Ms. Moore attempted to strike him but missed, prompting defendant to punch her in the face with his fist. Ms. Moore managed to escape from the trailer by the back door and went to her landlord's trailer. The police arrived soon thereafter and, accompanied by Ms. Moore, searched the trailer, where they found defendant hiding in a closet.

In testifying in his own defense, defendant gave a different version. He explained that he had wanted to come by Ms. Moore's trailer to retrieve a pair of shoes, part of his belongings that he had left there, and to see his son. When he looked into the bedroom, defendant saw a knife lying on the nightstand next to Ms. Moore's side of the bed. He entered the bedroom and grabbed the knife (while Ms. Moore was still sleeping) to prevent *her* from using it against *him* ; he explained that during their relationship they had had many fights and that in 1975 she had stabbed him with a knife. When Ms. Moore awoke she sat up in the bed and grabbed his arm, pulling at it, and as a result was accidentally cut by the back or tip of the knife blade. Defendant denied having used the knife intentionally, reiterating that he was only trying to prevent anyone from getting hurt. He admitted, however, that he had struck Ms. Moore with his fist while they were in the hallway shortly after the knifing incident. He also admitted he told Bamford to get out of the trailer but denied he made any threats. Defendant nevertheless testified that Bamford responded, "Please don't. Please don't."; and that Bamford appeared "hysterical."

## I.

■ Defendant contends that his counsel should have been permitted on cross-examination to elicit from Ms. Moore the fact that she had stabbed defendant with a knife in 1975. Upon objection by the prosecutor, the presiding justice excluded the proffered evidence. Defendant asserts that such testimony was crucial to his defense, as establishing his motive for allegedly picking up the knife from the nightstand.

■ We find no error in the justice's ruling. Defendant's *motive* in picking up the knife—assuming the jury believed his testimony as to where he had found it—was relevant to the jury's consideration of his culpable mental state in causing injury with it some moments later.[1] Establishing the *factual basis* for that motive, however, was only of marginal relevance, especially when the stabbing incident had occurred that far in the past.[2] The court was justifiably concerned that by allowing the defense to open up that collateral area with Ms. Moore, the prosecution would then be entitled on redirect examination to elucidate further the circumstances of the stabbing incident, which could easily have led to, as the court put it, a "trial within a trial," confusing the issue, misleading the jury, and wasting the court's time. In view of its marginal relevance, the evidence was clearly excludable under M.R.Evid. 403, and the presiding justice properly relied on that evidence rule in excluding it.

## II.

■ Defendant also asserts that the justice erred in refusing the following jury instruction requested by his attorney:[3]

1. Defendant's motive in picking up the knife was also a rebutting "circumstance" to be considered by the jury in determining whether defendant had caused bodily injury to the victim "under circumstances manifesting extreme indifference to the value of human life," *see* 17–A M.R.S.A. § 208(1)(C).

2. No issue of self-defense was even remotely raised by defendant at trial since Ms. Moore was asleep when defendant grabbed the knife that was allegedly beside her on the nightstand.

[T]he [d]efendant's act in picking up the knife in the bedroom can in and of itself be a strong factor in proving the elements of reckless conduct. If, however, you accept or believe the testimony of the [d]efendant as to why he picked up the knife then, obviously, that conduct wouldn't constitute a reckless act.

■ Defendant was charged with acting recklessly when he "caus[ed] . . . [b]odily injury to another," 17–A M.R.S.A. § 208(1)(B), (C); the requested instruction improperly suggests that the jury focus exclusively on defendant's state of mind when he "picked up the knife." Even if the jury had imputed to defendant a blameless motive in picking up the knife, the existence of such motive had no *necessary* bearing on his state of mind when moments later he slapped Ms. Moore with his right hand, causing injury with the knife, such that the jury were foreclosed *as a matter of law* from finding that he then conducted himself "recklessly." The presiding justice may properly refuse an instruction that is not sound law. *State v. Robinson*, 145 Me. 77, 72 A.2d 260 (1950).

## III.

In cross-examining Kevin Bamford, defense counsel established that the witness had given two statements to the Brunswick police. Counsel did not inquire further into the particulars of those statements or into the reasons for Bamford's giving more than one. However, in a subsequent attempt to impeach Bamford's credibility by showing his bias, defense counsel called Ms. Moore as a witness and asked her the following question:

3. We note that counsel failed to comply with M.R.Crim.P. 30(b), in that the requested instruction was presented to the court orally at the conclusion of the charge to the jury. Such belated requests frustrate the purpose of Rule 30(b) by depriving both the opposing party and the court of an adequate opportunity to study the proposed instruction in advance and, in the case of the party, to frame objections thereto.

Q  Miss Moore, I only have one question for you. I want you to think back when you went to the police station that night when they were taking your statement and eventually I guess Mr. Bamford came in and gave his statement. Do you recall at any time any police officer saying to Mr. Bamford in your presence making some comment about his statement?

Upon objection, counsel made the following offer of proof:

I expect this witness to answer in response to the question asked yes, I heard a police officer saying to Mr. Bamford "That statement is not enough. We want to hang this guy for 5 years. You're going to give another statement."

As the State now concedes, the proffered testimony was not hearsay because it was not "offered in evidence to prove the truth of the matter asserted," M.R.Evid. 801(c), and the justice should not have excluded it on that basis. The State nevertheless argues that the evidence was inadmissible because defense counsel did not lay a proper foundation for its admission by first establishing that Bamford's second statement, or his trial testimony, was more damaging to the accused than what he had told the police in his original statement. Although we disagree with the State's position and hold that the proffered evidence was presumptively admissible, we conclude that exclusion of that evidence was harmless error and did not result in prejudice to defendant's substantial rights. *See* M.R.Crim.P. 52(a).

■■■ As we stated in *State v. Doughty,* Me., 399 A.2d 1319, 1324 (1979):

Evidence of bias, hostility and personal interest of a witness may be shown by the introduction of independent evidence to that effect, and is not limited to cross-examination of the witness, and no preliminary foundation need be laid for its admissibility. This follows the long standing practice in this State . . . .

*See State v. Salamone,* 131 Me. 101, 159 A. 566 (1932); R. Field & P. Murray, *Maine Evidence* § 607.2 (1976). The fact that defense counsel chose to present the evidence through the testimony of Ms. Moore, rather than by exploring the matter on his cross-examination of Kevin Bamford or by calling the police officer as a witness,[4] might have affected the weight that the jury would have placed upon it, but that tactical decision did not serve to lessen defendant's right to place the evidence before the jury. As this court declared in *Salamone, supra* at 104, 159 A. at 567, quoting *Motley v. State,* 207 Ala. 640, 93 So. 508, 509 (1922):

[I]t is the party's right to inquire . . . as to the existence of any fact . . . which in the light of human experience might reasonably engender hostility towards the party, or affect the witness with partisan feeling, and thus impair the trustworthiness of his testimony.

We think that the statement allegedly overheard by Ms. Moore—even though not Bamford's own words but, rather, something said to him by another—had sufficient "tendency to make the existence of" a motive for Bamford to falsify his testimony "more probable . . . than it would be without the evidence," M.R.Evid. 401. As such, the evidence was relevant and hence presumptively admissible. M.R.Evid. 401, 402. If, for example, a defendant's friend threatened a prospective witness with injury unless he testified favorably to the accused, it could hardly be doubted that the prosecution could present the testimony of a third party who overheard such a threat, without any necessity for establishing as a foundation that the witness' testimony had in fact contained false statements. *Cf. Coleman v. State,* 545 S.W.2d 831 (Tex.Cr. App.1977) (error to exclude proffered evidence that members of police department disliked defendant and had on prior occasion instituted groundless charges against

4. The record discloses that the justice's ruling was based in part on his apparent belief that the proffered evidence should have been elicited directly from the police officer alleged to have made the statement to Bamford. The cases established no such requirement. *See* R. Field & P. Murray, *Maine Evidence* § 607.2 (1976).

him); *Kidd v. People*, 97 Colo. 480, 51 P.2d 1020 (1935) (error to exclude evidence, impeaching police officer, that officer had arrested a defense witness and had "put him in jail for 72 hours, telling him that unless the witness would testify to what he knew of and concerning the defendant, he [the officer] would 'pin something on him' or 'hang something on him' ").

■ However, a careful review of the entire record demonstrates that the court's erroneous exclusion of the proffered evidence of bias was harmless. Kevin Bamford's testimony was substantially the same as that of Ms. Moore and, indeed, of defendant himself. As to the charge of aggravated assault, the only factual issue disputed by defendant was whether he had found the knife in the bedroom as opposed to the kitchen. Bamford's testimony on that point was consistent with that of Ms. Moore: The latter did not recall where the knife was before she went to sleep that evening but stated that she ordinarily kept it in a kitchen drawer with the rest of her silverware, while Bamford testified that he did not recall seeing the knife in the bedroom prior to going to sleep. As to the charge of criminal threatening, defendant himself conceded that he was holding the knife as he spoke to Bamford, ordering him to leave. Defendant disputed only the precise words that had been uttered. It is apparent to us, as it must have been to the jury, that Bamford was "place[d] . . . in fear of imminent bodily injury," *see* 17–A M.R.S.A. § 209(1), when by defendant's own testimony Bamford had appeared "hysterical" and had responded to defendant's threatening words by saying, "Please don't. Please don't." In short, the record is devoid of the remotest indication that Bamford exaggerated or deliberately falsified his testimony as a consequence of anything allegedly said to him by an unnamed member of the Brunswick police. *Cf. Faulkner v. Commonwealth*, 423 S.W.2d 245 (Ky.1968) (harmless error to limit inquiry into possible bias of witness where record disclosed lack of factual basis for specific allegation of bias implicit in question asked).

### IV.

■ Defendant next argues that the presiding justice should have instructed the jury on simple assault, 17–A M.R.S.A. § 207, which he asserts is a lesser included offense of aggravated assault under subdivisions (B) and (C) of section 208(1). *Cf. State v. Carmichael*, Me., 405 A.2d 732 (1979) (simple assault is lesser included offense of section 208(1)(A)—causing "[s]erious bodily injury to another"). Defendant, however, has not properly preserved this point for appellate review. He asserts that his trial counsel specifically called the presiding justice's attention to the *Carmichael* case. In our view, merely "calling the court's attention" to some statute or case does not constitute a request that the court pursue a particular course of action or make a particular ruling. It is quite clear from the record that counsel was merely seeking a "clarification" of the court's position on the matter, and there is not the slightest indication that counsel expressed dissatisfaction with the court's ultimate decision not to give an instruction on simple assault. Counsel had every opportunity to request such an instruction and to object to the court's refusal to give one, but he failed to do so. In the face of the compelling evidence of aggravated assault, including defendant's own admissions from the witness stand, the absence of such an instruction clearly did not amount to "manifest injustice." *See State v. Northup*, Me., 318 A.2d 489 (1974).

### V.

■ Count II of the indictment charged that defendant committed the offense of criminal threatening, 17–A M.R.S.A. § 209, a Class D crime, with the use of a dangerous weapon, thus enhancing the offense for sentencing purposes to a Class C crime. *Id.* § 1252(4). In timely fashion defendant requested a jury instruction on the lesser included offense of simple criminal threat-

ening,[5] which instruction the court refused. Under the provisions of 17–A M.R.S.A. § 13(2) (Supp.1978),[6] the court was not required to give that instruction unless the evidence provided a rational basis for a finding of guilt on the lesser included offense. By his own admission defendant held the knife in his right hand as he ordered Bamford out of the bedroom; if the jury believed that a threat had been communicated, it would have been irrational for them to conclude otherwise than that defendant's use of the knife had been instrumental in conveying and emphasizing that threat. The instruction was properly refused.

### VI.

During a recess of the trial, defense counsel requested the presiding justice to exclude a certain Brunswick police officer from the courtroom, apparently because his presence there made defendant uncomfortable. Upon learning that neither side intended to call the officer as a witness in the case, the justice denied the motion to exclude him. Several minutes later counsel informed the justice that defendant claimed to have overheard the same police officer discussing Ms. Moore's testimony with another police officer who was a witness for the State. The court examined defendant concerning this allegation; defendant stated that he could not identify either of the participants in the alleged conversation because he was in a locked detention room at the time and he did not recognize the voice of either of them. The justice concluded his *voir dire* examination of defendant as follows:

THE COURT: In other words, it could be anyone?

A[NSWER]: Yes, your Honor.

After allowing an opportunity for further examination by counsel, the justice concluded:

> The Court, therefore, understands that there's no substantial evidence that there's been any noncompliance with the order of this Court and I would caution any observers in this Courtroom if they are in any way in a position where they would be in the presence of witnesses that will be in this Courtroom, that they are likewise informed they are not to discuss this case with any of the prospective witnesses in this case.

Defense counsel at trial made no objection to the court's handling of the matter, nor any request for further corrective action, but here on appeal defendant asserts that the presiding justice should have taken other measures to insure compliance with the sequestration order, including examining members of the Brunswick police force.

We note at the outset that a formal order concerning the sequestration of witnesses appears nowhere in the docket entries or in the transcript of the proceedings; however, a number of references to an "order" both by counsel and the court do appear, and we therefore assume that an order of some sort had been made. On the other hand, we cannot assume that the order went beyond the requirements of M.R. Evid. 615. A "sequestration order" under that rule has only limited consequences,

---

5. Under the code provision in effect at the time of the offense charged in the indictment, 17–A M.R.S.A. § 13(2) (Supp.1978), the definition of what was a lesser included offense was left to the case law. *See* 1975 Comment to section 13; *State v. Leeman*, Me., 291 A.2d 709 (1972). The question whether a "simple" crime was a lesser included offense of an "enhanced" crime—*i. e.*, a crime raised to a higher sentencing classification by reason of the provisions of section 1252(4)—was never squarely addressed by this court. We hasten to point out that in the wake of section 13(2)'s repeal, see note 6 below, the code itself in section 13–A(2)(A)

now provides a clear, affirmative answer to that question. Since our decision of the question under the prior law will have little or no precedential consequences hereafter, we decline to address it here and will assume for the sake of deciding this case that simple criminal threatening was under the prior law a lesser included offense of the enhanced crime of criminal threatening with the use of a dangerous weapon.

6. Subsequently repealed and replaced by P.L. 1979, ch. 512, §§ 20–21, enacting 17–A M.R. S.A. § 13–A (Supp.1979).

namely, that "*witnesses* [are] excluded so that they cannot hear the testimony of *other witnesses*" (emphasis added) until after they have finished testifying, and is not a general prohibition against witnesses talking about the case. Further, the rule says nothing in regard to the conduct of nonwitnesses. On this record we cannot say that the presiding justice was clearly erroneous in finding that no violation of his previous order had occurred, and we conclude that the steps he took in handling the matter were exactly what was required under the circumstances.

The entry must be:

Appeal denied.

Judgment affirmed.

All concurring.