**STATE of Maine**

v.

**Kenneth W. FARRINGTON.**

Supreme Judicial Court of Maine.

Feb. 20, 1980.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Kobritz & Hamilton, Harold Hamilton, Sharma Trager, Law Student, Bangor (orally), for defendant.

McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

WERNICK, Justice.

Indicted for perjury, 17–A M.R.S.A. § 451 (Supp.1979), defendant Kenneth W. Farrington, after a jury-waived trial in the Superior Court (Penobscot County), was adjudged guilty of false swearing, 17–A M.R.S.A. § 452 (Supp.1979), deemed to be a lesser included offense. Defendant has appealed from the judgment of conviction and makes two contentions: (1) the evidence of the falsity of defendant's statements was entirely circumstantial and, therefore, legally insufficient under a traditional rule which defendant says the Criminal Code has retained; (2) prosecutorial misconduct, violative of constitutional due process of law, brought about the necessity that defendant make any statements under oath in a judicial proceeding and, therefore, the instant prosecution of defendant based on particular statements thus made by him should not be permitted to be maintained.

We agree with defendant's contention on appeal that the evidence was insufficient to prove the essential element of the falsity of defendant's statements. We therefore sustain defendant's appeal, vacate the judgment of conviction and direct the entry of judgment of acquittal.

During the morning of June 19, 1979 defendant was found not guilty by the Lincoln District Court of having made an unauthorized use of a motor vehicle (17–A M.R.S.A. § 360). Defendant did not testify at this trial.

That afternoon, Timothy Hartford went to trial in Lincoln District Court for the same offense and was found guilty.

The same prosecutor conducted the two trials. As he was completing the presentation of the State's case at the trial of Hartford, the prosecutor noticed defendant standing in the back of the courtroom. Though aware that defendant had told a story to the police which was exculpatory of Hartford, the prosecutor then and there decided to call defendant to testify as the State's last witness. Defendant testified to the same story he had told the police. Immediately upon the conclusion of defendant's testimony, the prosecutor ordered him arrested for perjury. An indictment was returned accusing defendant of having made false material statements in testifying at Hartford's trial.

The allegedly false statements pertained to an incident which had occurred on April 30, 1979. At approximately 9:00 o'clock that night, two women were proceeding from Bangor to Lincoln, driving in an automobile along a two lane road. They noticed the taillights of a vehicle proceeding, as estimated, about a quarter to one-half mile ahead of them. They never saw the vehicle itself, or who was inside it, and they never came any closer to the vehicle than when they first observed it. Being engaged in conversation, they did not focus their attention on, or keep under continuous observation, the progress of the taillights in front of them.

Soon, as they proceeded up a hill but before they reached its crest, the women observed a loaded pulp truck overturned in

a gully at the women's right hand side of the road. It was lying angled on its right side. As they brought their vehicle to a stop, the women saw a man, who it eventuated was Timothy Hartford, emerging through the window of the cab of the overturned truck. The women asked Hartford whether he was all right. He replied: "We're all right, just leave us alone." Then, he hollered to somebody, by name, and ran into the adjacent woods. The women did not look inside the cab of the overturned truck and did not examine all of the area immediately surrounding the truck or the area of the gully under the right side of the truck. Where they did look the women saw no other person. They then drove to Lincoln and notified the police.

Approximately twenty minutes later, they returned with the police to the site of the overturned truck. Shortly thereafter, in company with a police officer, and at a place several hundred yards away from the overturned truck, the women saw Timothy Hartford walking on the road with a man who turned out to be the defendant.

The police officer asked the defendant some questions. Defendant told the officer that he and Hartford had been fishing. When they returned to their vehicle, which was in the woods, they found it could not be driven because it was stuck in some mud. They walked out to the road to hitchhike into Lincoln, and they then came upon the pulp truck overturned in the ditch.

The person who had prosecuted defendant and Hartford in the Lincoln District Court was the only witness who testified at defendant's perjury trial regarding the statements made by defendant under oath at Hartford's trial. In his testimony he explained that he had no thought of calling defendant as a State's witness at Hartford's trial until he happened to notice defendant watching the trial from the back of the courtroom. He acknowledged that there was no need to call defendant as a State's witness since he was satisfied that he had already presented enough evidence to convict Hartford. He also admitted that, as a prosecutor, he would not want a State's

witness to present evidence exculpatory of Hartford. Yet, despite his awareness that defendant's statements to Officer Hamlin would provide an alibi for Hartford, he nevertheless called defendant as the last witness for the State. He offered two reasons for this unusual conduct by a prosecutor. First, notwithstanding that the District Court Judge had acquitted defendant, it remained his personal belief that defendant operated, or was a passenger in, the pulp truck which overturned in the ditch. Second, he "wanted to hear  .  .  . [defendant's] side of the story."

The statements defendant had made under oath at Hartford's trial were described as follows. Defendant said that when he and Hartford came upon the overturned loaded pulp truck, no one else was in the area. Defendant further stated that he had not at any time seen Hartford in the cab of the overturned truck. Also, in response to a question whether he had left "the immediate vicinity" of the overturned truck while Hartford was there, defendant answered in the negative. Defendant made the additional statement that during all of the time he was in the "vicinity" of the overturned truck (that is, before he was seen walking on the road with Hartford several hundred yards from the truck), he neither saw nor heard anyone else there.

When all of the evidence had been presented at defendant's perjury trial in the Superior Court, defendant moved for judgment of acquittal, on the ground that the evidence presented to prove the falsity of the statements defendant had made at Hartford's trial was *only circumstantial* and, therefore, the evidence could not be legally sufficient to support a conviction under the indictment against defendant.

The presiding Justice found defendant not guilty of the crime of perjury because, as the fact-finder, he entertained a reasonable doubt regarding the materiality of *all* of defendant's statements. However, the Justice found beyond a reasonable doubt that two of defendant's statements were false. He therefore adjudicated defendant guilty of false swearing, a crime not involving the

materiality of the false statements as an essential element and which the Justice deemed to be a lesser included offense charged by the indictment for perjury. So concluding, the Justice denied defendant's motion for judgment of acquittal as to the crime of false swearing, thus in effect rejecting the validity of defendant's contention that the evidence of the falsity of the statements, because only circumstantial, was insufficient to support a conviction for the crime of false swearing.

In response to a motion by defendant for special findings of fact, the Justice found that defendant falsely stated that: (1) Timothy Hartford was *not* an occupant of the pulp truck at the time it left the road and overturned, and (2) defendant *was* "in the immediate area" of the overturned pulp truck at the time, and immediately after, the two women spoke to Hartford when he climbed out of the cab of the pulp truck.

The presiding Justice erred in refusing to order entry of judgment of acquittal. Defendant was charged with perjury, 17–A M.R.S.A. § 451(1)(A), and convicted of false swearing, 17–A M.R.S.A. § 452(1)(A).[1] Both sections contain the following provision:

"It is an affirmative defense to prosecution . . . that proof of falsity rested solely upon contradiction by testimony of a single witness." 17–A M.R.S.A. §§ 451(3), 452(2)

The Comment to Section 451 explains that it "makes little change in the present law" and continues the rule set forth in *State v. Rogers,* 149 Me. 32, 98 A.2d 655 (1953), described therein as "well established" and "substantially unanimous." *See also Newbit v. Statuck,* 35 Me. 315, 318 (1853); *Weiler v. United States,* 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945).

This traditional rule evolved from one which, by the early 1700s, had required proof of falsity by at least two witnesses who had knowledge by direct perception through their senses of facts contradicting the defendant's sworn statement. *See United States v. Wood,* 14 Pet. (39 U.S.) 430, 440–41, 10 L.Ed. 527 (1840); 7 Wigmore, Evidence §§ 2040–42 (Chadbourne rev. 1978); Model Penal Code § 208.20, at 134–35; Comment (Tent. Draft No. 6, 1957). Accordingly, as applied by the large majority of jurisdictions, the substance of the traditional rule is as summarized in *People v. Roubus,* 65 Cal.2d 218, 220, 53 Cal.Rptr. 281, 283, 417 P.2d 865, 867 (1966):

"Direct, as distinguished from circumstantial, evidence of the falsity of the defendant's testimony by at least one witness is generally required. . . . This does not mean that there must be a denial in the very words of the defendant's testimony . . . but that there must be testimony by at least one witness furnishing direct evidence of facts contrary to, or absolutely incompatible or physically inconsistent with, that sworn to by the accused."

*See Hann v. State,* 185 Ind. 56, 60–61, 113 N.E. 304, 306 (1916); generally, Annot. 88 A.L.R.2d 852, 859–64 (1963). Circumstantial evidence *alone* will be recognized to be sufficient, as an exception to the general rule, *only* where direct observation is impossible, as where defendant is accused of perjury as to his own mental state, e. g., "I don't remember." Model Penal Code, *supra,* at 137. *See* Orfield, "Proof of Perjury and the 'Two Witnesses' Requirement in Federal Criminal Cases", 17 SW.L.J. 227,

1. The relevant provisions read:
"§ 451. Perjury
"1. A person is guilty of perjury if he makes:
"A. In any official proceeding, a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true; . . ."
"§ 452. False swearing
"1. A person is guilty of false swearing if:

"A. He makes a false statement under oath or affirmation or swears or affirms the truth of such a statement previously made and he does not believe the statement to be true, provided
"(1) the falsification occurs in an official proceeding as defined in section 451, subsection 5, paragraph A, or is made with the intention to mislead a public servant performing his official duties; . . . ."

233 (1963). *Cf. State v. Doughty*, Me., 399 A.2d 1319, 1326 (1979) (circumstantial evidence permissible regarding defendant's intent to falsify).

The State contends that whatever may have been the rule previously operative in Maine, the Criminal Code, by formulating a rule in the language of proof of falsity resting "solely upon contradiction by one witness", manifests a legislative choice to authorize convictions for perjury and false swearing resting solely on circumstantial evidence of the falsity of defendant's statements.

We reject the State's contention.

First, the Comment to Section 451 states that the section "continues", not changes, the prior evidentiary requirement for perjury convictions, and this Comment also indicates that the formulation in the language "solely upon contradiction by testimony of a single witness" has the same substantive meaning as the rule applied in *State v. Rogers, supra.* Thus, the Comment to the Criminal Code refutes the State's contention that in enacting Sections 451 and 452, the Legislature decided to make a substantial move away from the special evidentiary rule traditionally applicable in perjury, or false swearing, cases.

Moreover, in this same regard, it avails the State nothing to rely on *State v. Gage*, 116 N.H. 656, 366 A.2d 501 (1976), which upheld a conviction for perjury notwithstanding that the evidence of the falsity of defendant's statements under oath was entirely circumstantial. We assume that the State cites *Gage* as indicative of the intendment of the Maine Legislature because the Comment to Section 451 says that

"[s]imilar provisions [to those of Section 451] are in  .  .  .  the  .  .  .  N.H. Criminal Code, section 641:1  .  .  .",

and the Comment to Section 452 states that the

"same provisions as are found in this section are in the New Hampshire Criminal Code, section 641:2  .  .  .  ."

However, examination of Sections 641:1 and 2 of the New Hampshire Criminal Code reveals that the provisions therein are the "same as" or "similar to" those of Sections 451 and 452 of the Maine Criminal Code only as they relate to the substantive elements of the crimes defined. The basic difference appears, which is critical for our present purposes, that Sections 641:1 and 2 of the New Hampshire Code entirely omit the language contained in Section 451(3) and Section 452(2) of the Maine Criminal Code as to

"proof of falsity rested solely upon contradiction by testimony of a single witness."

This omission in the current provisions of the New Hampshire Criminal Code reflects the New Hampshire Legislature's choice to persist in the abandonment of the traditional rule it had previously effected by an express provision in N.H.R.S.A. 587:1–d (Supp.1972), (repealed effective November 1, 1973). That the New Hampshire Legislature had thus done away with the traditional rule was expressly acknowledged by the Court in *State v. Gage, supra*, 366 A.2d at 503.[2]

The Comments to Sections 451 and 452 also refer to the Proposed Criminal Code of Massachusetts, Chapter 268 §§ 1 and 2 (1972). The Revision Commission Note to proposed Section 1 stated that the intendment was to reaffirm the "common law 'two witness rule.'"[3] Hence, the reference in the Comments to the provisions of the Proposed Criminal Code of Massachusetts strongly indicates a similar intendment by the Maine Legislature to retain, not abandon, the traditional rule.

Moreover, the Comment to Section 451 refers to Article 241 of the Model Penal

---

2. In *Gage* the Court noted, too, a special circumstance there present which would in any event have constituted an exception to the traditional rule, that "one of the statements concerned the defendant's knowledge of a matter not susceptible of direct proof." *Id.*, at 503.

3. The language of the test which thus reaffirmed the traditional rule stated that a conviction would not stand where the "proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant."

Code, and this further refutes the State's contention that the Criminal Code aimed to depart from the traditional rule. Section 241.1(6) of the Model Penal Code states:

> "*Corroboration.* No person shall be convicted of an offense under this Section where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant."

The Comment to this subsection explained that its effect was to retain the traditional rule, by which a safeguard was provided which would induce witnesses to testify freely. In the balancing of policy interests it was thought that this benefit overweighed "the occasional inability to convict an apparent perjurer." Model Penal Code § 208.20, Comment (Tent. Draft No. 6, 1957).

We therefore decide that Section 451(3) and Section 452(2) of the Criminal Code manifest the retention of the traditional rule that the essential element of the falsity of the statements made by defendant under oath must be proved by more than circumstantial evidence. There must be in addition to any such corroborating circumstantial evidence at least one witness who provides direct positive evidence of such facts as render defendant's statement of the facts a false statement. In this context "direct" evidence means what a witness has perceived directly through the senses; "positive" direct evidence, more particularly as it may relate to the *negative* fact at issue, here, whether defendant was *not* present at a given place at a given time, is evidence which comes from a witness who had opportunity to perceive directly through the senses the entire area in question continuously throughout the time involved, without having perceptual attention diverted. *See* 1 Wigmore on Evidence § 25, at 399–400 (3d Ed.1940).

Focusing specifically on the two statements of defendant which the presiding Justice found to be false, we must conclude that the State failed to go beyond corroborative circumstantial evidence and prove such falsity by additional direct and positive evidence provided by at least one witness.

As to the proof of the falsity of defendant's statement that Timothy Hartford was not an occupant of the overturned pulp truck at the time it left the road and tipped over, the two women who testified never directly perceived through their senses that Hartford was the occupant of any truck as it was moving or as it tipped over. Moreover, the women never perceived directly through their senses the nature of the vehicle which had the taillights they saw moving a quarter to a half mile ahead of them at a speed of approximately 45 miles per hour. In addition, the women neither saw nor heard any vehicle leave the road and overturn. Thus, more particularly since the overturned pulp truck was discovered by the women at a place on an upgrade before its crest—so that from that area the taillights of a vehicle which had passed over and beyond the top of the hill would no longer be visible—the two women had no direct perceptional knowledge that the loaded pulp truck overturned in the ditch was the vehicle with the taillights they had seen in front of them. The women's direct perceptions could not exclude that the pulp truck overturned in the ditch may have been another vehicle which was already there when the vehicle with the taillights seen by the women may have continued along the highway and proceeded over and beyond the crest of the hill out of the women's sight.

In sum, the testimony of the women, to the extent that it provided evidence which was direct and positive, yielded only a *circumstantial* basis for an *inference* that the vehicle with the taillights which they had seen proceeding ahead of them was the pulp truck they observed overturned in the ditch. This being so, the women's direct observation of Hartford emerging from the cab of the overturned pulp truck could not be sufficient to constitute their direct and positive evidence that he had been an occupant of the truck at the time it was proceeding on the highway, left the road and overturned. In terms of what the women had directly perceived, such a conclusion could be only an inference from circumstances.

We turn to the proof of the falsity of the other statement of the defendant found by the presiding Justice to be false, that during all the time when the women spoke with Hartford upon his emergence from the cab of the overturned pulp truck, defendant was in, and did not leave, the "immediate area" of the overturned truck.

While the two women were talking with Hartford, they saw only the underside of the pulp truck as it lay angled on its right side in a gully. At that time, then, the women were unable to have direct sensory perceptions of the presence, or absence, of defendant at the front (engine), or the opposite (rear), areas of the pulp truck. Neither could they have direct sensory perceptions of the presence, or absence, of the defendant in the area of the gully underneath the right side of the pulp truck as it lay tipped over. After Hartford had fled, the women looked about the front (the engine), and the opposite (the rear), areas of the pulp truck. However, neither woman ever looked in the cab of the truck or in the area of the gully which was under the passenger side of the truck. More particularly, since Hartford said to the women: *"We're all right"* (emphasis added), and they heard him hollering for someone by name, facts which indicated the presence of someone else in the immediate area of the truck, the failure of the women to examine *all* of the area in the "immediate vicinity" of the truck where a person could be was a critical deficiency which precluded their testimony from being the direct and positive evidence of a witness contradicting defendant's statement that he was present within the immediate area of the overturned truck while, and shortly after, the two women spoke with Hartford. Whether or not defendant was thus present was left a fact to be *inferred from circumstances.*

The evidence was therefore legally inadequate to support the conviction of defendant for the crime of false swearing. Defendant was entitled to a judgment acquitting him of that crime.[4]

The entry is: Appeal sustained; judgment of conviction vacated.

Case remanded to the Superior Court with direction that judgment of acquittal be entered.

---

4. Hence, we need not decide whether defendant's conviction should be set aside because of prosecutorial behavior contravening defendant's constitutional right to due process of law.

We do, however, express our strong disapproval of what appears to have been the motivation, and conduct, of the person who prosecuted defendant and Timothy Hartford in the Lincoln District Court.

The record before us gives prima facie indication that because of personal feelings of disgruntlement over the failure of his prosecution of defendant for the unauthorized taking of a motor vehicle, the prosecutor resorted to unsound tactics in prosecuting Hartford, jeopardizing the success of that prosecution, merely to set the stage, as the first hoped-for step to achieve a personally desired prosecution of defendant for perjury. Moreover, it appears that the prosecutor so acted well aware that no record was being made of the testimony given at the Hartford trial and that, therefore, it would be necessary that the prosecutor himself, having a personal attitude unfavorable to defendant, should be a key witness against defendant in the perjury prosecution, testifying regarding defendant's allegedly false statements at the Hartford trial.

Such overreaching conduct by a prosecutor, to satisfy his personal interests, would be an abuse of prosecutorial power which cannot be condoned.