2002 ME 22

**STATE of Maine**

v.

**Scott P. ANTHOINE.**

Supreme Judicial Court of Maine.

Argued: Dec. 5, 2001.
Decided: Feb. 8, 2002.

G. Steven Rowe, Attorney General, Leanne Robbin, Assist. Attorney General (orally), Augusta, for State.

Sean M. Farris (orally), Farris, Heselton, Ladd & Bobrowiecki, P.A., Gardiner, for defendant.

Panel: RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Scott Anthoine appeals from a judgment of conviction of false swearing (Class D), 17–A M.R.S.A. § 452(1)(A)(2) (1983),[1] entered after a jury trial in the Superior Court (Kennebec County, *Marden, J.*). On appeal, Anthoine argues that the absence of direct evidence precludes his conviction under the "two witness" rule as enunciated in *State v. Farrington*, 411 A.2d 396 (Me.1980). We affirm the judgment.

I.

[¶ 2] At trial, the State presented the following uncontroverted evidence: Anthoine was a legislative assistant in the Republican office in the Legislature. On March 14, 2000, he was given a petition for Joni Lyn Grant, a potential Republican candidate for House District 92 (comprising Hallowell, Pittston, Chelsea, and part of Randolph), and told to go to Hallowell and collect signatures. Twenty-five certi-

---

**1.** 17–A M.R.S.A. § 452(1)(A)(2) (1983) provides:

A person is guilty of false swearing if ... he makes a false statement under oath or affirmation or swears or affirms the truth of such a statement previously made and he does not believe the statement to be true, provided ... the statement is one which is required by law to be sworn or affirmed before a notary or other person authorized to administer oaths ....

fied signatures of residents of the district registered to vote as Republicans had to be filed with the Secretary of State by March 15 to qualify Grant for the June primary. The executive director of the state Republican party gave Anthoine the most recent list of registered Hallowell Republicans he had, which dated from February 1996.

[¶ 3] Anthoine collected twenty-eight signatures. The first three names on the petition were Julia Barlow of 47 Middle Street and Lyn and Robert Gray of 26 Greenville Street. Barlow, however, died in March 1996, and it is uncontested that the Grays did not sign the petition. The other twenty-five signatures were genuine, although one was disqualified because the signer was not a registered Republican and another because the signer lived in Farmingdale.

[¶ 4] Anthoine presented the petition to be certified at the Hallowell city offices on the morning of March 15. He signed the circulator's verification on the back of the petition, stating,

> I hereby declare that all of the signatures to the petition were made in my presence and that, to the best of my knowledge and belief, each signature is the signature of the person whose name it purports to be, and each person is enrolled in the Republican Party and is a resident of the electoral division named in the petition.

His signature was notarized by City Clerk Deanna Hallett.

[¶ 5] Anthoine did not testify, but he was interviewed by Detective Richard Fairfield of the Attorney General's Office. Fairfield testified that Anthoine stated that after receiving the list of registered voters, he went to the vicinity of 47 Middle Street and began knocking on doors, but nobody was home. He saw a woman on the street and asked her if she knew Julia Barlow. She said she *was* Julia Barlow and was a

registered Republican, and he asked her to sign the petition. He then drove back to Route 201 and onto Greenville Street, where he got out of his car and started knocking on doors, looking for registered voters. He saw a couple walking down the street and asked them if they knew Rob and Linda Gray. They said they *were* the Grays, and they signed the petition.

[¶ 6] Fairfield testified, using a map, that all the people named on the petition except Barlow, the Grays, the woman from Farmingdale, and Grant, lived close to each other in a small area of downtown Hallowell. He also testified that 47 Middle Street, Barlow's last address, was Walter's Home for the Elderly, an assisted living facility with a receptionist sitting at a desk just inside the glass double doors.

[¶ 7] At the close of the evidence Anthoine moved for a judgment of acquittal, which the court denied. The jury found Anthoine guilty and the court sentenced him to thirty days in jail with all but forty-eight hours suspended.

## II.

■ [¶ 8] In *State v. Farrington,* 411 A.2d 396, 401 (Me.1980), we held that

> Section 451(3) [perjury] and Section 452(2) [false swearing] of the Criminal Code manifest the retention of the traditional rule that the essential element of the falsity of the statements made by defendant under oath must be proved by more than circumstantial evidence. There must be in addition to any such corroborating circumstantial evidence at least one witness who provides direct positive evidence of such facts as render defendant's statement of the facts a false statement.

This rule, known generally as the "two witness" rule and sometimes as the "quantitative evidence" rule, has deep common-

law roots and remains in force in the vast majority of jurisdictions. *See id.* at 399–401.[2]

[¶ 9] Anthoine does not dispute that his statement was under oath or affirmation and that it was required by law to be sworn. *See* 21–A M.R.S.A. § 335(7)(A) (1993) (petition must be verified by circulator by oath or affirmation before notary). He relies on the *Farrington* holding, however, to argue that his false swearing conviction cannot stand because the State adduced no direct evidence that his statement under oath—that to the best of his knowledge and belief the signatures on the petition were genuine—was false. Although the State attempts an argument to the contrary, Anthoine is correct that the State presented no direct evidence on the element of falsity; there was no direct evidence that *he knew* Barlow and the Grays did not sign the petition. On its face, therefore, the "two witness" rule would seem to bar Anthoine's conviction on the evidence presented.

[¶ 10] The *Farrington* opinion, however, recognizes a major exception to the rule. "Circumstantial evidence *alone* will be recognized to be sufficient, as an exception to the general rule, *only* where direct observation is impossible, as where defendant is accused of perjury as to his own mental state, *e.g.* 'I don't remember.'" *Id.; see also State v. Doughty,* 399 A.2d 1319, 1326 (Me.1979) (holding that state of mind element of perjury is provable by circumstantial evidence). This exception is widely recognized. *See, e.g.,* J.A. Bock, Annotation, *Conviction of Perjury where One or More of Elements is Established Solely by Circumstantial Evidence,* 88 A.L.R.2d 852, 877 (1963) (it is "generally held that circumstantial evidence alone may be sufficient to establish that a statement of belief, opinion, memory, etc., was wilfully false") (citing cases).

[¶ 11] This exception forecloses Anthoine's reliance on the "two witness" rule and thus disposes of his appeal. Anthoine argues that the State's evidence was insufficient because, although there was direct evidence that Barlow and the Grays did not sign the petition, there was no direct evidence that he knew that and therefore swore falsely. The exception cited in *Farrington* makes it clear that no direct evidence of Anthoine's mental state was required; the State could and did prove his knowledge by circumstantial evidence. The application of the exception to this case makes sense; it would be unreasonable to require the State, having proved beyond any doubt that Barlow and the

---

2. In *Farrington* we cited subsection 2 of the false swearing statute, which provided: "It is an affirmative defense to prosecution under this section that ... proof of falsity rested solely upon contradiction by testimony of a single witness." 17–A M.R.S.A. § 452(2) (Pamph.1976). The same provision was found in the perjury statute, section 451. We concluded that the Legislature intended by this language to continue in effect the traditional rule set forth above and found in such cases as *State v. Rogers,* 149 Me. 32, 36, 98 A.2d 655, 658 (1953), and *Newbit v. Statuck,* 35 Me. 315, 318 (1853). *See Farrington,* 411 A.2d at 400–01.

Since then, the Legislature has deleted the quoted portion of subsection 2 and added a new subsection 2–A. P.L.1983, ch. 317, §§ 14, 15; P.L.1983, ch. 430, § 3. Subsection 2–A now reads:

> In a prosecution under subsection 1, paragraph A, evidence that the allegedly false testimony or statement in the prior official proceeding or before a notary or other person authorized to administer oaths was contradicted by evidence in that proceeding may not be a sufficient basis by itself to sustain a conviction for false swearing.

17–A M.R.S.A. § 452(2–A) (Supp.2001). Neither party argues that the Legislature intended this change in statutory language to alter the "two witness" rule as set forth in *Farrington.*

Grays did not sign the petition, to produce direct evidence of Anthoine's state of mind.

[¶ 12] Anthoine does not contend that the circumstantial evidence of his knowledge was insufficient under ordinary standards of proof, and any such contention would be meritless. The evidence was sufficient for a jury to rationally find beyond a reasonable doubt that Anthoine was guilty of false swearing.

The entry is:

Judgment affirmed.

DANA, J., files dissenting opinion.

DANA, J., dissenting.

[¶ 13] I respectfully dissent. Scott Anthoine circulated a nominating petition in the City of Hallowell. Twenty-eight persons signed the petition. Scott signed an oath that:

> to the best of my knowledge and belief, each signature is the signature of the person whose name it purports to be
> . . . .

[¶ 14] At his trial, the State established that three of the twenty-eight signatures were forgeries.[3] Other than that fact, the State presented no evidence that Scott knew, or should have known the signatures were forgeries.[4] If a defendant can be convicted of false swearing on this evidence, then those who circulate petitions are now on notice that their participation

in our political process may be hazardous to their freedom.

---

3. The statute governing primary petitions requires the procurement of "at least 25 and not more than 40" signatures, 21–A M.R.S.A. § 335(5)(G) (1993), presumably in recognition that some of the signatures may prove to be void, *id.* § 335(2).

4. The court leaves the inference that the defendant had attempted to reach Julia Barlow

at Walter's Home for the Elderly and therefore would have been informed either that she was no longer a resident or that she had died four years earlier. There was no evidence that Anthoine stopped at Julia's former residence before or after obtaining the "Julia Barlow" signature.