1998 ME 231

**Mark RICCI**

v.

**Jessica DELEHANTY.**

Supreme Judicial Court of Maine.

Argued Sept. 10, 1998.
Decided Oct. 22, 1998.

Alexander MacNichol (orally), Francis M. Jackson, Jackson & MacNichol, Portland, for plaintiff.

Kenneth P. Alstshuler (orally), Altshuler & Vincent, Portland, for defendant.

Margaret Lavoie, Givertz Lunt Hambley & Scheffee, PA, Portland, Guardian ad Litem.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

[¶ 1]  Jessica Delehanty appeals from the judgment entered in the Superior Court

(Cumberland County, *Wheeler, J.*) awarding parental rights and responsibilities to Mark Ricci. Delehanty contends, inter alia, that the trial court did not make the necessary findings of fact required by M.R. Civ. P. 52.[1]

[¶ 2] Delehanty and Ricci are the parents of Christina. Although never married, they lived together at the time Christina was born. Ricci physically abused Delehanty on more than one occasion before Delehanty, in 1993, moved to New York state to live with Salvatore Russo.

[¶ 3] When Delehanty moved to New York she took Christina with her, and Ricci filed a complaint for parental rights and responsibilities. Following the filing of the complaint, Delehanty restricted Ricci's access to Christina. Delehanty feared a re-occurrence of the domestic violence and worried about the quality of care Ricci could provide.

[¶ 4] On July 19, 1995, the Superior Court (Oxford County, *Calkins, J.*) ordered the parties to share parental rights and responsibilities on a two-week rotating schedule and concluded that neither party owed child support arrearage. The order provided that in six months time the guardian ad litem would investigate the shared residency arrangement and, at the request of either the guardian ad litem or a party, the court would review the arrangement. While the parties were sharing parental rights, conflicts often erupted during visitation transfers. At the August 1996 transfer, Ricci recorded an argument that occurred between himself, a friend named Billy Davis, Delehanty and Russo.

[¶ 5] After the guardian ad litem completed her review of the shared residency arrangement, both parties requested that the primary residence of Christina be awarded to them. In preparation for the hearing, the Superior Court (Cumberland County, *Wheel-*

er. *J.*) set November 15, 1996 as the deadline for the designation of expert witnesses. When Delehanty failed to abide by the deadline, the court ordered her to produce all discoverable information relating to her experts by January 15. On January 13, Delehanty produced a summary of the facts and opinions to which her experts, Dr. Gayton and Dr. Denburg, would testify.

[¶ 6] Ricci was not satisfied with the summary and requested that Delehanty provide additional information on Dr. Gayton's conclusions and the basis for those conclusions. When Delehanty did not supplement Gayton's proposed testimony by the first day of the trial, the court ordered that she do so by the third day. On the third day of trial, Delehanty produced a summary of Gayton's testimony which said he would discuss, inter alia, the "progression of victims of abuse and his views that Jessica's feelings towards Mark ... are typical of victims of abuse...." Ricci objected to the testimony on the ground that this was the first notice he had received of testimony on victims of abuse. The court excluded all testimony on the subject.

[¶ 7] After a four-day hearing at which the guardian ad litem, law enforcement officers and two clinical psychologists testified, the court awarded Ricci primary physical custody of Christina and the right to control the major aspects of her upbringing.

### I. M.R. CIV. P. 52

[¶ 8] Delehanty contends that the trial court was required to explicitly articulate both the ultimate conclusions required by 19 M.R.S.A § 752(5–A) (Supp.1996), *repealed by* P.L.1995, ch. 694, § B–1 (effective Oct. 1, 1997), and the findings of fact on which those conclusions were based.[2] We conclude that the court's findings of fact were adequate.

---

1. M.R. Civ. P. 52(a) provides that, "[i]n all actions tried upon the facts without a jury ... the Superior Court justice ... shall, upon the request of a party made as a motion ..., find the facts specifically and state separately its conclusions of law thereon.... If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."

2. Title 19 M.R.S.A. § 752(5–A) states that,
   [t]he court shall establish conditions of parent-child contact in cases involving domestic abuse as follows.
   **A.** A court may award primary residence of a minor child ... to a parent who has committed domestic abuse only if the court finds that contact between the parent and child is in the best interest of the child and that adequate provision for the safety of the child

[¶ 9] In reviewing whether the trial court's findings of fact are sufficient, "we must determine whether the findings adequately indicate the factual basis of the ultimate conclusion." *In re Sabrina M.*, 460 A.2d 1009, 1013 (Me.1983). Mechanically reciting the language of the statute governing the issue is not sufficient, *In re Amber B.*, 597 A.2d 937, 938 (Me.1991); neither is a bare synopsis of trial testimony, *In re Kenneth H.*, 1997 ME 48, ¶¶ 3–5, 690 A.2d 984, 985.

[¶ 10] The first finding required by section 752(5–A) before the court can award primary residence to a parent who has committed domestic abuse is that the contact between the child and the perpetrator of abuse is in the best interest of the child. In reaching its decision to award primary residence to Ricci, the court thoroughly discusses each factor that it must consider when assessing the best interest of the child pursuant to 19 M.R.S.A. § 752(5) (Supp.1996), *repealed by* P.L.1995, ch. 694, § B–1 (effective Oct. 1, 1997).³ This discussion addresses the issue of domestic abuse and its effect on Christina. The court found that Ricci was violent towards Delehanty on more than one occasion, that he had addressed this problem through therapy, and that there is no credible evidence that he had been violent since 1993. Delehanty, on the other hand, has continued to verbally abuse Ricci, at times in the presence of Christina. Although Christina has been aware of the violence between her parents, the court found that there is no evidence of how this knowledge has affected her.

[¶ 11] The second finding required by section 752(5–A) is that adequate provision for the safety of the child and the victim of domestic abuse can be made. The court premises the discussion of what is in the best interest of the child by stating that it considers "as primary the safety and well-being of the child." In addition, one of the factors the court discusses thoroughly when applying the best interest of the child test was the effect of the domestic abuse on the safety of the child. It is, therefore, implicit in the court's findings with regard to the best interest of the child that adequate provision for the safety of Christina can be made. With regard to the safety of Delehanty, the court makes provisions: the transfers of Christina must take place at a public place in New York and at the Bridgton Police Department.

[¶ 12] The court's decision contains a thorough discussion of all findings of fact necessary to reach the ultimate findings required by section 752(5–A). In addition, the court states that it has considered the section. All that is missing from the court's decision is a recitation of the ultimate findings at the end of the discussion. Delehanty did not request these additional findings. Further, the rote repetition of a statute does not aid this Court in understanding the basis for the trial court's decision.

---

and the parent who is a victim of domestic abuse can be made.

3. Title 19 M.R.S.A. § 752(5) states that, in applying the best interest of the child standard, the court shall consider the following factors:
  **A.** The age of the child;
  **B.** The relationship of the child with the child's parents . . .;
  **C.** The preference of the child . . .;
  **D.** The duration and adequacy of the child's current living arrangements . . .;
  **E.** The stability of any proposed living arrangements for the child;
  **F.** The motivation of the parties involved and their capacities to give the child love, affection and guidance;
  **G.** The child's adjustment to the child's present home, school and community;
  **H.** The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
  **I.** The capacity of each parent to cooperate or to learn to cooperate in child care;
  **J.** Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
  **K.** The effect on the child if one parent has sole authority over the child's upbringing;
  **K–1.** The existence of domestic abuse between the parents, in the past or currently, and how that abuse affects:
    (1) The child emotionally; and
    (2) The safety of the child;
  **K–2.** The existence of any history of child abuse by the parent; and
  **L.** All other factors having a reasonable bearing on the physical and psychological wellbeing of the child.

## II. THE EXCLUSION OF DR. GAYTON'S TESTIMONY

[¶ 13] Delehanty next contends that the trial court erred in excluding Dr. Gayton's testimony on victims of abuse. We disagree. This Court reviews a trial court's decision as to the sanction imposed for failing to comply with a discovery order for abuse of discretion. *Employee Staffing of America, Inc. v. Travelers Ins. Co.*, 674 A.2d 506, 508 (Me.1996).

[¶ 14] A party to litigation may require any other party to state the subject matter on which his or her experts are expected to testify. M.R. Civ. P. 26(b)(4)(A)(i). On motion, the court may order further discovery. M.R. Civ. P. 26(b)(4)(A)(ii). If a party fails to comply with the order, the court may impose sanctions, M.R. Civ. P. 37(b)(2), including prohibiting the offending party "from introducing designated matters in evidence," M.R. Civ. P. 37(b)(2)(B). *See Butler v. Poulin*, 500 A.2d 257, 259 (Me.1985).

[¶ 15] In this case, Delehanty violated the original discovery deadline and failed to comply with the trial court's M.R. Civ. P. 26(b) discovery order. As a result, Ricci was not fully informed of the subject matter of Gayton's testimony until two days after the trial had begun. The court acted well within its discretion.

## III. LEADING QUESTIONS ON CROSS–EXAMINATION

[¶ 16] When Ricci called Delehanty as an adverse witness, the trial judge prevented Delehanty's counsel from asking her leading questions on cross-examination. Delehanty contends that this was error.

[¶ 17] The trial court is vested with broad discretion in controlling the mode of examining witnesses. *State v. Chapman*, 645 A.2d 1, 2 (Me.1994). When the witness is biased in favor of the cross-examiner, the court may prohibit leading questions. FIELD & MURRAY, MAINE EVIDENCE § 611.4 at 298 (4th ed.1997). Given that counsel was cross-examining his own client, the court's decision to prohibit leading questions was well within its discretion.

## IV. THE TAPE RECORDING

[¶ 18] Delehanty argues that the court erred in allowing Ricci to play the tape recording of the August 1996 visitation transfer as rebuttal evidence and erred again in relying on the recording to assess the credibility of the witnesses. This Court reviews the allowance of rebuttal evidence for abuse of discretion. FIELD & MURRAY § 611.8 at 302. Rebuttal evidence is evidence that "contravenes, antagonizes, confutes, or controls 'the inference sought to be drawn by new facts introduced by the adverse party at the next previous stage.'" *State v. Libby*, 546 A.2d 444, 448 (Me.1988) (quoting *Payson v. Bombardier, Ltd.*, 435 A.2d 411, 413 (Me.1981)).

[¶ 19] Ricci played the tape recording in order to contradict the testimony of Delehanty.[4] The admission of the recording as rebuttal evidence was well within the court's discretion. *See State v. Cyran*, 586 A.2d 1238, 1240 (Me.1991) (finding no abuse of discretion when trial court permitted the State to play portions of a tape recorded conversation as rebuttal evidence).

## V. CHILD SUPPORT ORDER

[¶ 20] Delehanty contends that the trial court should have reopened the issue of past due child support because the July 19, 1995 order declaring that neither party owed any child support arrearage was based on misinformation. We review the determination of child support for abuse of discretion. *Hebert v. Hebert*, 475 A.2d 422, 425 (Me.1984). There is insufficient evidence in the record to set aside the court's decision not to reopen the issue.

## VI. ATTORNEY FEES

[¶ 21] Delehanty contends that pursuant to 19 M.R.S.A. § 722(3) (1981), *re-*

---

4. Delehanty testified that at the August visitation transfer, "Billy Davis said he was going to put a bullet in my head." The recording of the conversation discloses that Davis said, "Jess, you know you ought to go put a bullet in your head."

*pealed by* P.L.1995, ch. 694, § B–1 (effective Oct. 1, 1997),[5] the court was obligated to award her attorney fees because she had no income and Ricci was both employed and owned property.

[¶ 22] In denying Delehanty attorney fees, the court states that it has considered the ability of each party to absorb the costs of litigation, "all factors that reasonably bear on the fairness and justness of the award," and the "earnings and earning capacity of each of the parties." These factors are precisely the factors that this Court has stated the trial court should consider. *See Rosen v. Rosen,* 651 A.2d 335, 337 (Me.1994); *Harding v. Murray,* 623 A.2d 172, 177 (Me.1993). We affirm the court's decision to deny attorney fees.

The entry is:

Judgment affirmed.

5. Title 19 M.R.S.A. § 722(3) provides that, "[w]hen making a final decree, the court may order a party charged with payment of support, alimony or money in place of alimony to pay reasonable counsel fees."