2005 ME 60

**STATE of Maine**

v.

**Laura KIRK.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2005.
Decided: May 23, 2005.

G. Steven Rowe, Atty. Gen., Donald W. Macomber, Asst. Atty. Gen., William Stokes, Asst. Atty. Gen., Augusta, for State.

Jeffrey M. Silverstein, Russell, Silver & Silverstein, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

**CLIFFORD, J.**

[¶ 1] Laura Kirk appeals from a judgment of conviction for murder, 17–A M.R.S.A. § 201(1)(A) (Supp. 2004), entered in the Superior Court (Aroostook County, *Mead, J.*) following a jury trial. Kirk contends that the court erred in failing to instruct the jury on the lesser included offense of manslaughter, in admitting testi-mony regarding prior violent acts, and in delaying a ruling on her objection to the admission of testimony. Although we agree with Kirk that non-reputation character evidence was improperly admitted at trial, its admission was harmless error. Kirk's other contentions are without merit, and we affirm the judgment.

[¶ 2] In January of 2002, Kirk was indicted for the intentional and knowing murder of Tara Bell pursuant to 17–A M.R.S.A. § 201(1)(A).[1] Following a jury trial in June of 2003, the jury returned a verdict of guilty, and Kirk was sentenced to fifty years incarceration. Her appeal followed.

## I. LESSER INCLUDED OFFENSE

[¶ 3] Kirk first contends that the court erred in failing to instruct the jury on manslaughter, a lesser included offense of the crime of intentional and knowing murder for which she was tried. Kirk failed to object to the jury instructions as given and, accordingly, we review the instructions for obvious error. *See* M.R.Crim. P. 52(b); *State v. Small*, 2000 ME 182, ¶ 5, 763 A.2d 104, 105. Obvious error is that error "affecting substantial rights." M.R.Crim. P. 52(b). Pursuant to the obvious error standard of review, relief is not granted "unless the error in the instructions is so highly prejudicial and so taints the proceedings as to virtually deprive the defendant of a fair trial." *Small*, 2000 ME 182, ¶ 5, 763 A.2d at 105.

[¶ 4] A lesser included offense is defined as "an offense carrying a lesser penalty which ... [a]s legally defined, must necessarily be committed when the offense or alternative thereof actually charged, as legally defined, is committed."

---

1. "A person is guilty of murder if the person ... [i]ntentionally or knowingly causes the death of another human being ...." 17–A M.R.S.A. § 201(1)(A) (Supp. 2004).

17-A M.R.S.A. § 13-A(2) (1983). Manslaughter is a lesser included offense of intentional and knowing murder because the two offenses are identical except for the state of mind of the defendant that the State is required to prove. *State v. Tomah*, 1999 ME 109, ¶ 15, 736 A.2d 1047, 1052. Intentional and knowing murder requires proof beyond a reasonable doubt that the defendant *intentionally* or *knowingly* caused the death of another person. 17-A M.R.S.A. § 201(1)(A); *see also* 17-A M.R.S.A. § 35(1), (2) (1983). In contrast, manslaughter requires proof beyond a reasonable doubt that the defendant caused the death of another person *recklessly* or with *criminal negligence.* 17-A M.R.S.A. § 203(1)(A) (Supp. 2004); *see also* 17-A M.R.S.A. § 35(3), (4) (1983).

[¶ 5] Although our case law is clear that manslaughter is a lesser included offense of intentional and knowing murder, nevertheless a jury should not be instructed on a lesser included offense "unless on the basis of the evidence there is a rational basis for finding the defendant guilty of that lesser included offense." 17-A M.R.S.A. § 13-A(1) (1983). If there is a rational basis for finding the defendant guilty of the lesser offense, "the lesser included offense shall be considered by the factfinder *if requested by either the State or defendant;* otherwise, its consideration shall be a matter within the discretion of the court." 17-A M.R.S.A. § 13-A(1) (emphasis added).

[¶ 6] Relying on our decision in *Tomah,* an appeal from a murder conviction in which we concluded that the trial court did not err in instructing the jury as to the lesser offense of manslaughter, Kirk argues that the manslaughter instruction should have been given at her trial. *See Tomah*, 1999 ME 109, ¶¶ 14-16, 736 A.2d at 1052-53. The manslaughter instruction in *Tomah,* however, was requested by the State. *Id.* ¶ 14 & n. 9, 736 A.2d at 1052. In this case, neither Kirk nor the State requested a manslaughter instruction. Indeed, Kirk's defense was not at all based on the State's failure to prove that she acted with an intentional or knowing state of mind. Rather, she argued that the murder was committed by a third person. Even assuming that the evidence in Kirk's case did generate an instruction on the lesser included offense of manslaughter, because neither party ever requested such an instruction, the trial court's decision to not instruct the jury on manslaughter was a matter within its discretion. In the circumstances of this case, we conclude that the court acted well within its discretion in instructing the jury only as to the charged offense of knowing and intentional murder.

## II.  PRIOR VIOLENT ACTS

[¶ 7] Kirk also contends that the court erred in admitting evidence regarding a violent act she allegedly committed prior to Bell's death. Kirk, in her cross-examination of a State's witness, elicited nonreputation testimony regarding Kirk's nonviolent character. The State was then allowed to present the challenged rebuttal evidence consisting of a specific instance of Kirk's violent conduct. We review the admission of evidence, to which Kirk objected, for clear error or an abuse of discretion. *See Tomah*, 1999 ME 109, ¶ 7, 736 A.2d at 1050.

[¶ 8] The following exchange took place during Kirk's cross-examination of Gilles Michaud, her former stepfather:

Q  You and [Kirk] had a good relationship?

A  Yes.

Q  Okay. And was she ever violent during those 18 or 19 years you—ever see her do anything crazy?

A  Not really, no.

Q  Was she kind of a low-key individual or a high-key or—

A  Low-key, I guess.

Later, during a sidebar conference with the court, the State indicated that it was going to rebut Michaud's testimony by calling Gerald Kirk, Kirk's former husband, as a witness, and to question him about prior acts of violence committed by Kirk. Following an offer of proof by the State, the court concluded that by eliciting testimony from Michaud regarding Kirk's general nonviolent character, Kirk had opened the door to allow the State to rebut Michaud's testimony with Gerald's testimony describing specific instances of Kirk's physical violence. Thus, the court allowed Gerald to testify about an incident in which Kirk threw a drinking glass at Gerald, striking him in the face and requiring eight stitches.

■ [¶ 9] Pursuant to M.R. Evid. 404(a), "character evidence is generally inadmissible for the purpose of proving that a person acted in conformity therewith." *State v. Naylor*, 602 A.2d 187, 189 (Me.1992). Rule 404(b) of the Maine Rules of Evidence more specifically provides that evidence of prior bad acts is inadmissible as character evidence: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

■ [¶ 10] Rule 404(a) also offers exceptions to the general rule of inadmissibility of character evidence. It provides, in pertinent part, that "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same," is admissible. M.R. Evid. 404(a)(1). "A trait is pertinent if the existence or nonexis-

tence of the trait would be involved in the commission or noncommission of the particular crime charged." *Naylor*, 602 A.2d at 189 (citation omitted). It need not, however, be an element of the crime charged. *Id.* Thus:

> [t]he accused has the right ... to offer evidence of the accused's good character. If he or she exercises the option, the accused must pay the price for attempting to prove his or her good name by throwing open the door that the law has left closed for the accused's benefit.

Field & Murray, *Maine Evidence* § 404.2 at 127 (2000 ed. 1999). In short, evidence of prior bad acts is admissible to prove conformity therewith *if* the defendant in a criminal case opens the door with direct testimony regarding a character trait pertinent to the crime charged.[2] M.R. Evid. 404(a)(1).

■ [¶ 11] Rule 404 governs *what* character evidence may be admissible. The *method* of proving such character, however, is governed by M.R. Evid. 405. In *all instances* in which character evidence is admissible for any reason, Rule 405 unambiguously sets out the only permissible ways in which such character may be shown. It provides, in pertinent part: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into relevant specific instances of conduct." M.R. Evid. 405(a). A "reputation witness must be testifying from personal knowledge on the subject of what the defendant's reputation for the pertinent trait of character involved is in the community to which the defendant belongs or

2.  Rule 404(a)(1) of the Maine Rules of Evidence covers character evidence of the accused in a criminal case. Additionally, M.R. Evid. 404(a)(2) covers the admission of char-

acter evidence of a witness, including prior bad acts. *See also* M.R. Evid. 607, 608, 609. Rule 404(a)(2) is not relevant to this case, however.

among his associates." *Naylor*, 602 A.2d at 190 n. 8.

[¶ 12] Thus, when a defendant seeks to offer evidence of her nonviolent character, which may open the door to the admissibility of rebuttal evidence by the State, both the defendant and the State are limited by Rule 405 as to *how* such evidence may be offered. The defendant is permitted to offer character evidence only in the form of reputation testimony. The State is permitted to offer rebuttal character evidence only by cross-examining the defendant's character witness regarding specific instances of conduct, or by offering reputation evidence through other witnesses. These are the exclusive means by which character evidence may be offered.

[¶ 13] Accordingly, it was error for the court to allow Kirk to elicit testimony in her cross-examination of Michaud that Kirk was a nonviolent, low-key person, because the evidence was not presented in the form of reputation testimony pursuant to Rule 405. The court further erred by then allowing the State to elicit from a different witness, Gerald Kirk, direct testimony about a specific instance of Kirk's prior violent behavior rather than reputation testimony. Kirk did open the door to the admission of character evidence, but the State was still required to comply with Rule 405. Even though Kirk's evidence did not comply with the limitations of Rule 405, the State should have been limited, in its rebuttal, to cross-examining Michaud about specific instances of Kirk's conduct and/or to offering the direct testimony of Gerald Kirk or other witnesses regarding Kirk's reputation for violence. Contrary to the State's argument, the court's improper admission of Michaud's non-reputation testimony offered by Kirk, did not allow the State to then disregard the limits of Rule 405 by offering the kind of rebuttal testimony it did.

[¶ 14] In *State v. Bourgeois*, 639 A.2d 634 (Me.1994), for example, the defendant was charged with aggravated assault, reckless conduct with a dangerous weapon, and operating a motor vehicle under the influence of alcohol or drugs as a result of an incident in which he drove his car off the Maine Turnpike causing severe injuries to his second wife, a passenger in the car. *Id.* at 634–35. During trial, defense counsel elicited testimony from the defendant's fiancée to the effect that the defendant did not have a reputation for violence. *Id.* at 635. To rebut the testimony, the State called the defendant's first wife as a witness and asked her about a similar incident in which the defendant had punched her while in their car, pulled over to the side of the road and forced her out of the car, and then attempted to run her over with the car several times. *Id.* at 636.

[¶ 15] The State argued that the first wife's testimony was admissible as rebuttal to the testimony of the defendant's fiancée. *Id.* We concluded that, pursuant to Rules 404(a)(1) and 405(a), the defendant was permitted to elicit the testimony from his fiancée regarding his reputation for nonviolence. *Id.* That testimony opened the door to rebuttal testimony by the State, but pursuant to Rule 405(a), the State should have been limited to cross-examining the defendant's fiancée regarding specific instances of the defendant's conduct, or to offering reputation evidence through another witness. *Id.* Because the State did not limit itself to reputation evidence, but was permitted to offer the direct testimony of another witness, the first wife, about a specific instance of conduct, the admission of that testimony was error. *Id.* We stated: "Rule 405 ... provides that reputation evidence is the *exclusive* method by which a character trait may be proven on direct examination. This rule also applies to the direct examination of

rebuttal witnesses." *Id.* (citation omitted). The trial court in this case erred in admitting Michaud's testimony regarding Kirk's character for nonviolence, and in addition by allowing Gerald to testify about a specific instance of Kirk's violent conduct.

[¶ 16] Unlike the case in *Bourgeois,* however, the error in this case is harmless. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." M.R.Crim. P. 52(a). An error is harmless "when it is highly probable that it did not affect the jury's verdict." *State v. DeMass,* 2000 ME 4, ¶ 17, 743 A.2d 233, 237.

[¶ 17] The error is harmless in this case for two reasons. First, in *Bourgeois,* the character evidence improperly admitted involved an act virtually identical to the act for which the defendant was being tried. Kirk, however, was on trial for murder involving conduct very different from the character evidence admitted regarding her throwing a glass at someone. Second, the other evidence in this case linking Kirk to the homicide is very strong. Kirk and Gerald were in the process of divorcing, but Kirk hoped they could reconcile. Gerald was having a romantic relationship with Bell, the day-care provider for the Kirks' children. Kirk blamed Bell for the fact that she and Gerald could not reconcile. Kirk confessed to friends of having "bad thoughts" that could get her locked up for the rest of her life, of wanting to hurt Bell, and of fantasizing about hiding in Bell's car and slitting Bell's throat. Soon after, Bell was found dead in her home, having been stabbed multiple times in the face, arms, and torso. Bell's injuries included stab wounds to her neck and heart, either of which could have been fatal. Kirk's vehicle was identified by border patrol agents nearby Bell's home on the evening of Bell's death. Bell's estranged husband was on the phone with Bell that evening when Bell indicated to him that someone was at the door. Bell identified the person as Kirk, and Bell's husband recognized Kirk's voice through Bell's phone. Kirk later made a phone call to Gerald from Bell's home. Kirk's blood was found on Bell's refrigerator, and Kirk had a bruise on her forehead and cuts on her neck and hands that appeared on the same night as Bell's death. Bloody footprints were also found in Kirk's van, matching those found in Bell's home following her death. The strength of that evidence leads us to conclude that it is highly probable that the jury did not convict Kirk of this brutal murder because she threw a glass at her husband seven years before the murder and nine years prior to trial. The error is harmless.

[¶ 18] Kirk's final assertion of error is that the court improperly delayed its ruling on Kirk's objection to the admission of testimony. Because the court did inform the jury of its ruling, albeit sometime after the objection, and instructed the jury to disregard the testimony, the contention is without merit.

The entry is:

Judgment affirmed.