MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2015 ME 1
Docket:       Pen-14-46
Argued:       October 8, 2014
Decided:      January 6, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, <u>JABAR</u>, and HJELM, JJ.[*]

## STATE OF MAINE

v.

## JEFFREY P. WYMAN

JABAR, J.

[¶1]  Jeffrey P. Wyman appeals from a judgment of conviction of perjury (Class C), 17-A M.R.S. § 451(1)(A) (2014), entered in the trial court (*Anderson, J.*) after a jury trial.  Jeffrey contends that the trial court abused its discretion by (1) allowing the State to introduce and comment on his silence following his arrest for operating under the influence (OUI), (2) allowing a police officer to testify to his opinion that "there were lies told" during Jeffrey's trial for OUI, at which Jeffrey was acquitted, and (3) admitting the testimony of a Verizon employee that the State offered as a custodian of cell phone billing records.  We discern no abuse of discretion and affirm Jeffrey's conviction.

---

   *Silver, J., sat at oral argument and participated in the initial conference but retired before this opinion was issued.

## I. BACKGROUND

[¶2]  In September 2012, Jeffrey Wyman was indicted for perjury relating to testimony he provided during his January 2012 trial for OUI.  Jeffrey's son, David M. Wyman, was also indicted for perjury relating to his testimony during Jeffrey's OUI trial.  During the father and son's consolidated perjury trial, the State argued that Jeffrey and David had concocted a timeline of events supporting the assertion that Jeffrey was not guilty of OUI because he had become intoxicated after going off the road on April 20, 2011, and that Jeffrey and David had given false testimony supporting that timeline during the OUI trial.

[¶3]  Before the perjury trial, the defense became aware that the State intended to introduce cell phone billing records to contradict the account of events that Jeffrey and David provided during the OUI trial.  The defense therefore requested and the court issued a discovery order requiring the State to provide, at least thirty days before jury selection, a report of any expert witnesses that it intended to call.  *See* U.C.D.R.P – Bangor 16A(c).[1]  On the date scheduled for jury selection, the State sought a continuance to allow it time to comply with the court's discovery order.  After the court denied this request, the State decided not to call an expert witness to interpret the cell phone billing records.

---

[1]  The Bangor Unified Criminal Docket Rules of Procedure have since been superseded by the Maine Rules of Unified Criminal Procedure.  M.R.U. Crim. P. 1(e)(1).

[¶4]  At trial, the State presented the testimony of an officer who arrested Jeffrey for OUI and participated in the perjury investigation.  It also presented the testimony of a Verizon employee, who testified as a custodian of the cell phone billing records.

A.    The Officer's Direct Examination

[¶5]  During the perjury trial, the officer testified that when he arrived at the scene of the accident on April 20, 2011, at 12:57 p.m., Jeffrey smelled of alcohol and had bloodshot eyes and slurred speech.  He stated that he asked Jeffrey how much he had had to drink that day and that Jeffrey told him that he had consumed one beer at 8:30 a.m.

[¶6]  The prosecutor asked the officer whether Jeffrey at any time told him that he had gone off the road at 9:38 a.m. and drank seven or eight beers between that time and the time of the officer's arrival.  The officer responded, "No, he did not."  Defense counsel objected to the question on the ground that it improperly suggested a burden on the defense to produce evidence, and moved for a mistrial.  During a bench conference, the court overruled the objection and denied the motion, observing that Jeffrey had not invoked his right to remain silent, and stating that "when a defendant chooses to answer a question and then answers it in a way that is different at trial, then it is admissible to point out that the first time the information was obtained was during the testimony at trial."

4

[¶7] The prosecutor asked the officer whether he was aware before the OUI trial that Jeffrey claimed that he had gone off the road at 9:38 a.m., and the officer responded in the negative. The prosecutor then asked, "[W]hen was the first time that you realized that [Jeffrey] said -- or was saying that after he went off the road he drank six to seven beers?" and the officer answered, "During the [OUI] trial." Defense counsel again objected to the question, asserting that it had already been answered and that it improperly implied that Jeffrey had an obligation to produce evidence. The court sustained the objection.

B.     The Officer's Testimony on Cross-Examination

[¶8] When the defense cross-examined the officer about his participation in the perjury investigation, the officer stated that after the OUI trial he "started digging around to try and figure out . . . what happened," and that he "made some notes that [he] felt detailed the nuances of the lies that were told in court" during the OUI trial. Defense counsel asked the officer whether he disagreed with Jeffrey's acquittal in the OUI case, and the officer responded, "That's fair to say, yes." Defense counsel then asked "And, so, when you say you started looking around, you were looking at sort of what your options were after Mr. Wyman being acquitted in the OUI?" The officer responded, "No, I wasn't looking what my options were. I was convinced, as I am today, that there were lies told, and I started to look for evidence to prove those lies." Defense counsel objected to the

answer as nonresponsive, improper opinion testimony, and an effort by the officer to influence the jury. The court noted that defense counsel's questions had elicited the response, but issued an immediate curative instruction, telling the jury that the officer's opinion as to Jeffrey's truthfulness was not relevant to the issue of the truth or falsity of Jeffrey's statements during the OUI trial.

[¶9] During closing arguments, both sides referred to the officer's testimony. The State asked the jury to consider "in what context [Jeffrey's] statements were made, what was said before, what was said after, and then you'll see exactly why the testimony that we have in this case shows that [Jeffrey was] misleading and deceitful in that first case." Defense counsel did not object to this statement. Both sides emphasized to the jury that it was responsible for determining which witnesses were credible. The court reiterated this instruction during the closing remarks of its charge to the jury.

C.    The Verizon Employee's Testimony

[¶10] During its case in chief, the State sought to introduce cell phone billing records for Jeffrey, David, and David's roommate under the business records exception to the rule against hearsay, M.R. Evid. 803(6), and to lay the necessary foundation through testimony of a Verizon employee offered as custodian of the records. The State asserted that the employee would not testify as an expert and would not offer an interpretation of the records, but would explain

6

what the columns on the records represented. Jeffrey conceded that the records qualified as business records under Rule 803(6), but objected to their admission and to the witness's explanation of them on the ground that her explanation was either inadequate or beyond the scope of a custodian's permissible testimony. He argued that the interpretation of an entry on his April 20, 2011, billing record showing receipt of a call at 10:59 a.m. with an "origination" in Millinocket was a subject of expert testimony. He also argued that admission of the record without expert testimony would prejudice him because it would cause the jury to believe that the record proved that he was in Millinocket at the time of the 10:59 a.m. phone call.

[¶11] The court observed that the defense knew that the State would offer the billing records and the Verizon employee's explanation of them well in advance of trial, and that the defense had the ability to determine the substance of the employee's testimony and to produce its own expert interpretation of the records. After a voir dire of the Verizon employee, the court admitted the records and the employee's explanation of them over Jeffrey's objection, ruling that the employee was not going to testify as an expert and that her testimony would neither violate the court's discovery order nor prejudice the defense. The court specifically ruled that the witness could testify that Jeffrey's 10:59 a.m. phone call

used the Millinocket tower, but could not testify about how far away someone could be from that tower and still use it.

[¶12] The Verizon employee testified that she was qualified to provide the explanation of the cell phone billing records by her training and experience interpreting similar bills for over twenty years. She testified that the record for Jeffrey's phone on April 20, 2011, showed that his phone received a call from David at 10:59 a.m. using a tower in the vicinity of Millinocket, and that his phone was used to call David at 12:03 p.m. using a tower in the vicinity of Argyle. On cross-examination, the employee testified that for a call listing an "origination" in Orono, the caller was "in the vicinity of Orono . . . close enough to pick up [the] tower in Orono," but that she had no idea how close was "close enough."

[¶13] The defense then presented the testimony of an electrical engineer, who was offered as an expert in cell phone technology. The engineer described several reasons why the "origination" column on a billing record could not be relied upon as proof of a person's location at the time that the person made or received a call.

D.     The Verdict

[¶14] The jury found Jeffrey guilty of perjury. After the court denied his motion for a judgment of acquittal, Jeffrey was ordered to pay a $1,000 fine and sentenced to 120 days' imprisonment, execution of which was stayed pending this

8

appeal.[2]

## II. DISCUSSION

A.    Comment on the Defendant's Silence

[¶15]   Jeffrey argues that the State improperly introduced his post-arrest silence by eliciting the officer's testimony (1) that Jeffrey did not report during the OUI investigation that he drank alcohol after going off the road, and (2) that the officer did not hear Jeffrey's account of drinking after going off the road until the OUI trial.   He also argues that the State impermissibly commented on his silence during its closing argument when it asked the jury to consider the context of Jeffrey's statements, including "what was said before" and "what was said after." He contends that this comment and the elicitation of this testimony violated his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process.   *See* U.S. Const. amend. VI, XIV.   The State contends that these references constituted a proper attack on Jeffrey's credibility.

[¶16]   "The trial court is vested with broad discretion in controlling the mode of examining witnesses." *Ricci v. Delehanty*, 1998 ME 231, ¶ 17, 719 A.2d 518; *see* M.R. Evid. 611(a).   "Absent an abuse of discretion [that] interferes with the rights of a party to a fair trial, we will uphold the trial court's decisions

---

[2]   The jury also found David guilty of perjury and he too appealed from his conviction.   We address David's appeal in a separate opinion. *See State v. Wyman*, 2015 ME 2, --- A.3d ---.

concerning the scope and manner of examination of witnesses." *State v. McKenna*, 1998 ME 49, ¶ 3, 707 A.2d 1309. We thus review the court's denial of Jeffrey's motion for a mistrial for an abuse of discretion. *See State v. Logan*, 2014 ME 92, ¶ 14, 97 A.3d 121. Because Jeffrey did not object at trial to the prosecutor's alleged reference to his silence during closing argument, we review that portion of his claim for obvious error. *See State v. Johnson*, 472 A.2d 1367, 1374 (Me. 1984).

[¶17] "A prosecutorial reference to silence by the accused may, under certain circumstances, require a new trial." *Id.* at 1373. However, when a defendant gives a statement to the police that conflicts with an exculpatory statement presented at trial, the State may inquire into the defendant's failure to give the exculpatory statement to the police because such inquiry draws a negative inference from the prior inconsistent statement rather than from the defendant's failure to speak. *United States v. Donnat*, 311 F.3d 99, 104-05 (1st Cir. 2002). When a defendant is accused of perjury at trial, a disparity between the defendant's pretrial statements and his testimony at trial is also admissible for the purpose of showing that the defendant testified falsely at trial. *See State v. Doughty*, 399 A.2d 1319, 1325 (Me. 1979) (concluding that, in a perjury case, a disparity between the defendant's pretrial conduct and her conduct at trial is admissible to prove the elements of perjury and to impeach).

[¶18]  Before he was arrested for OUI on April 20, 2011, Jeffrey told the officer who had responded to his single-vehicle accident that he had consumed one beer that morning at 8:30.  During the OUI trial, he explained his intoxication at the time the officer found him by testifying that he had drunk eight beers after going off the road at 9:38 a.m.  During the perjury trial, the court allowed the State to elicit and refer to testimony by the arresting officer that highlighted the discrepancy between Jeffrey's pre-arrest statement and his testimony during the OUI trial.  Because the perjury trial turned on the truth of Jeffrey's testimony during the OUI trial, the court determined that the discrepancy between Jeffrey's pre-arrest statement and his testimony during the OUI trial was relevant to show the elements of perjury and to impeach Jeffrey by a prior inconsistent statement.

[¶19]  The State's initial inquiry into Jeffrey's failure to tell the officer that he became intoxicated after going off the road followed the officer's testimony that Jeffrey reported before his arrest that he had consumed one beer at 8:30 a.m.  The inquiry, when viewed in context, appears to have been made for the dual purposes of proving the falsity of Jeffrey's testimony at the OUI trial and impeaching Jeffrey's credibility by a prior inconsistent statement.  The prosecutor's reference to this information during his closing argument as "what was said before" and "what was said after" must likewise be understood to compare Jeffrey's pre-arrest statement with his testimony at trial for the same dual purposes.  Therefore, both in

its examination of the officer and in its final argument, the State cannot be seen to have commented on or referred to Jeffrey's silence in violation of his constitutional rights.

[¶20] The court did not abuse its discretion in declining to declare a mistrial following the officer's testimony that Jeffrey did not report drinking after going off the road. We also find no error in the prosecutor's reference to this testimony during the State's closing argument.

B.    The Officer's Opinion

[¶21] Jeffrey argues that the trial court erred in allowing the officer to testify to his opinion that "there were lies told" during the OUI trial. He contends that this statement constituted prosecutorial misconduct, that it was nonresponsive to the question asked, and that it usurped the jury's exclusive function of evaluating how much credence to give to Jeffrey's testimony. In response, the State contends that the trial court's immediate instruction cured any prejudice to Jeffrey resulting from the admission of the officer's opinion.

[¶22] We review the admission of the officer's opinion, to which Jeffrey objected, for clear error or an abuse of discretion. *See State v. Kirk*, 2005 ME 60, ¶ 7, 873 A.2d 350. In so doing, we defer to the trial court's determination that a curative instruction will remedy any prejudice caused by the admission of evidence. *State v. Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032. A curative

12

instruction will "be deemed inadequate to eliminate prejudice" only "where there are exceptionally prejudicial circumstances or prosecutorial bad faith." *Id.* (quotation marks omitted).

[¶23] Jeffrey's attempt to characterize the officer's opinion as prosecutorial misconduct fails because it conflates the officer with a prosecutor. Moreover, the officer's testimony that "there were lies told" during the OUI trial was in response to defense counsel's questioning. Defense counsel did not object the first time that the officer expressed his opinion that "lies were told in court" during the OUI trial, opting instead to continue with a line of inquiry intended to impeach the officer by demonstrating that he was biased. After asking whether the officer disagreed with Jeffrey's acquittal in the OUI case, defense counsel asked an open-ended question about the nature of the OUI investigation. In response, the officer expressed his opinion for a second time that "there were lies told" during the OUI trial. Defense counsel then objected, and the court immediately instructed the jury that it should not consider the officer's opinion when evaluating the truth or falsity of Jeffrey's testimony during the OUI trial.

[¶24] The officer's opinion was relevant to the issue of the officer's bias and was elicited by the defense. The court issued an immediate curative instruction when requested by the defense. Under these circumstances, Jeffrey cannot establish that the court abused its discretion in allowing the opinion in

evidence, or that the opinion was prejudicial to him. The trial court determined that its curative instruction would remedy any prejudice to Jeffrey caused by admission of the officer's opinion. We defer to this determination and presume that the jury followed the court's instruction. *See Dolloff*, 2012 ME 130, ¶ 55, 58 A.3d 1032.

C.    The Verizon Employee

[¶25]  Jeffrey argues that the Verizon employee's explanation of the timing and "origination" columns on his cell phone billing record constituted expert testimony and not merely the testimony of a custodian of records. He asserts that because the State did not identify the Verizon employee as an expert pursuant to the court's discovery order, the court erred in admitting the Verizon employee's testimony about the contents of the records.

[¶26]  Whether proffered evidence requires expert explanation is a question left to the discretion of the trial court. Field & Murray, *Maine Evidence* § 702.1 at 374 (6th ed. 2007). We review the court's decision to admit the Verizon employee's explanation of the billing records for abuse of discretion or clear error of law. *See State v. Nelson*, 2010 ME 40, ¶ 9, 994 A.2d 808.

[¶27]  Testimony constitutes an expert opinion when it concerns "scientific, technical, or other specialized knowledge" and "will assist the trier of fact to understand the evidence or to determine a fact in issue." M.R. Evid. 702.

14

A witness who testifies to the contents of cell phone billing records should be qualified as an expert if her testimony employs some form of specialized knowledge.[3]

[¶28] Specialized knowledge is not necessary, however, when a witness conveys only the factual information displayed on cell phone billing records. *Perez v. State*, 980 So.2d 1126, 1131-32 (Fla. Dist. Ct. App. 2008). A witness need not be an expert to explain that the timing column on a cell phone billing record refers to the time at which a call was made or received, or to explain that the "origination" column refers to the location of the cell tower used by a phone to make or receive a call. *See id.*

[¶29] In this case, the Verizon employee did not opine on the minimum distance between a cell phone and cell tower required to make a connection between the two, or otherwise testify to matters of cell phone technology. She did not rely on specialized knowledge in explaining the timing and "origination" columns on the records.

[¶30] The court did not abuse its discretion in admitting the Verizon employee's testimony. Because the Verizon employee did not testify as an expert,

---

[3] *See generally* Aaron Blank, *The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone*, 18 Rich. J.L. & Tech. 3, 33 (2011).

we do not address Jeffrey's contentions that the State violated the court's discovery order.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Richard L. Hartley, Esq., Law Office of Richard L. Hartley, Bangor, for appellant Jeffrrey P. Wyman

R. Christopher Almy, District Attorney, and Tracy Collins Lacher, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

**At oral argument:**

Richard L. Hartley, Esq., for appellant Jeffrrey P. Wyman

Tracy Collins, Asst. Dist. Atty., for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2012-3789
FOR CLERK REFERENCE ONLY