MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 2
Docket:        Pen-14-69
Argued:        October 8, 2014
Decided:       January 6, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, <u>JABAR</u>, and HJELM, JJ.[*]

STATE OF MAINE

v.

DAVID M. WYMAN

JABAR, J.

[¶1]  David M. Wyman appeals from a judgment of conviction of perjury (Class C), 17-A M.R.S. § 451(1)(A) (2014), entered by the trial court (*Anderson, J.*) after a jury trial.  David contends that the State failed to present direct evidence of the falsity of his testimony that gave rise to the perjury charge and that the evidence was therefore insufficient to support his conviction.  He also argues that the court abused its discretion in admitting cell phone billing records. We reject David's contentions and affirm his conviction.

I.  BACKGROUND

[¶2]  On April 20, 2011, Jeffrey P. Wyman was arrested for operating under the influence (OUI).  After a jury trial, Jeffrey was found not guilty.  Jeffrey and

---

[*]Silver, J., sat at oral argument and participated in the initial conference but retired before this opinion was issued.

his son, David Wyman, both testified during the OUI trial, and it is this testimony that gave rise to the instant perjury case.

[¶3] During the OUI trial, Jeffrey testified that on April 20, 2011, he was driving his wife's Cadillac from his home in Millinocket to David's home in Orono when he lost control of the vehicle due to snowy driving conditions and went off the interstate near Argyle at mile marker 204. Jeffrey testified that he went off the road at 9:38 a.m., called David twice at 9:45 a.m., was unable to reach him, and left a message. He testified that David called him back at 10:59 a.m. and that he then asked David to call a tow truck. Jeffrey testified that he became bored and drank eight beers on the side of the road while waiting for the tow truck, and that he called David at 12:03 p.m. to check on the status of the tow truck. He acknowledged that he was inebriated when police officers arrived at the scene shortly after the 12:03 p.m. phone call, but asserted that he had not been impaired while he was driving.

[¶4] David's testimony during the OUI trial largely corroborated Jeffrey's. David testified that he was expecting a visit from Jeffrey on April 20, 2011. He testified that, around 10:00 a.m., he began to wonder where Jeffrey was, checked his phone, and saw that he had two missed calls and two voice messages from Jeffrey. David testified that he called Jeffrey back at 10:59 a.m., at which point Jeffrey told him that he was off the road and asked him to call a tow truck. David

testified that his then-roommate was present at the time and that his roommate's phone was used to call 4-1-1 to get the number for Union Street Towing, and then to call Union Street Towing, sometime between 10:59 a.m. and 12:03 p.m. David testified that he called Jeffrey at 12:03 p.m. to let him know that a tow truck was on its way.

[¶5] After Jeffrey was acquitted of OUI in January 2012, the State began an investigation into whether Jeffrey and David had testified falsely during the OUI trial. In September 2012, both father and son were indicted for perjury. David was accused of falsely testifying that when he called Jeffrey at 10:59 a.m., Jeffrey reported that he had gone off the road and asked him to call a tow truck. He was also accused of falsely testifying that his roommate's phone was used to call 4-1-1 and the towing company sometime between 10:59 a.m. and 12:03 p.m.[1]

[¶6] During the perjury trial, David's then-roommate testified that he called 4-1-1 on April 20, 2011, at David's request, but that he could not remember the time of the request or the call.

---

[1] David was charged with four counts of perjury, two of which concerned his testimony about the substance of his 10:59 a.m. phone call to Jeffrey and one of which related to his testimony about the timing of the calls to 4-1-1 and the towing company. The substance of the remaining count is not relevant to this appeal. Because all of David's testimony related to the same event and was given under one oath in one proceeding, the trial court properly consolidated the three counts upon which David was ultimately convicted into a single count. *See State v. Walker*, 506 A.2d 1143, 1149 (Me. 1986) (concluding that when an indictment suffers from multiplicity, or the charging of a single offense in multiple counts, the proper remedy is consolidation); *State v. Shannon*, 136 Me. 127, 133, 3 A.2d 899, 903 (1939) ("[S]tatements relating to the same transaction . . . if made under one oath and in one judicial proceeding constitute only one perjury.").

4

[¶7]  An emergency dispatcher testified that she was working on April 20, 2011, and received a 9-1-1 call at 12:01 p.m. in which the caller reported seeing a Cadillac go off the road.  The person who made that call then testified that he contacted 9-1-1 immediately after observing a large vehicle go off the road near mile marker 204.

[¶8]  A police officer also testified that he was driving south on the interstate on April 20, 2011, near mile marker 204, when he saw a large vehicle pass him and go off the road at 12:05 p.m.

[¶9]  The State then sought to introduce cell phone billing records for Jeffrey, David, and David's roommate, to contradict Jeffrey and David's testimony about the timing and substance of their phone calls on the day of the OUI arrest. The State offered the records pursuant to the business records exception to the rule against hearsay, M.R. Evid. 803(6).  It intended to lay the requisite foundation through the testimony of a Verizon employee offered as custodian of the records.

[¶10]  A voir dire of the Verizon employee showed that she would testify that the "origination" and time columns on the billing records referred to the location of the tower picked up by a phone and the time that a call was made or received.  David objected to admission of the records, arguing that Maine Rule of

Evidence 403 prohibited their admission without expert interpretation.[2] He contended that without expert interpretation the records would lead the jury to believe that the "origination" column established where the caller was at the time that a call occurred, resulting in unfair prejudice to him.

[¶11] The court admitted the billing records into evidence over David's objection, and the Verizon employee testified about their contents. The employee testified that the billing record for David's roommate's phone showed that the roommate called 4-1-1 at 12:06 p.m. She testified that the billing record for David's phone showed that David called his voicemail twice at 9:45 a.m., called Jeffrey at 10:59 a.m., and received a call from Jeffrey at 12:03 p.m. She also testified that the billing record for Jeffrey's phone showed that Jeffrey received a call from David at 10:59 a.m. "originating" through a tower in the vicinity of Millinocket, and that Jeffrey called David at 12:03 p.m. with the call "originating" through a tower in the vicinity of Argyle.

[¶12] The defense then presented the testimony of an electrical engineer as an expert on cell phone technology. The engineer testified that it is unusual for the State to use cell phone billing records in court because billing records are inaccurate and incomplete when compared with raw data records. He also

---

[2] Although David also argued that the interpretation of the billing records was beyond the scope of a custodian's permissible testimony, he did not preserve this argument for appeal. At no time did David object to admission of the records under Maine Rule of Evidence 803(6).

6

explained a number of reasons why the "origination" column on a billing record should not be relied upon to establish where a person was when he made or received a call.

[¶13]  The jury found David guilty of perjury.  After the court denied his motion for a judgment of acquittal, David was convicted, ordered to pay a $500 fine, and sentenced to five days' imprisonment, execution of which was stayed pending this appeal.[3]

## II.  DISCUSSION

[¶14]  On appeal, David argues that the State presented no direct evidence of the falsity of his statements and that the evidence was therefore insufficient to support a guilty verdict.  He also contends that the trial court abused its discretion in admitting the cell phone billing records over his objection.

### A.    Sufficiency of the Evidence

[¶15]    When reviewing the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt," drawing upon all reasonable inferences from the evidence presented.  *State v. Haag*, 2012 ME 94, ¶ 17, 48 A.3d 207 (quotation

---

[3]  The jury also found Jeffrey guilty of perjury and he too appealed from his conviction.  We decide Jeffrey's appeal in a separate opinion.  *See State v. Wyman*, 2015 ME 1, --- A.3d ---.

marks omitted). "We will reverse a jury verdict only where no trier of fact rationally could find proof of guilt beyond a reasonable doubt." *Id.* (quotation marks omitted).

[¶16] A person is guilty of perjury if he makes a false material statement under oath or affirmation in an official proceeding and he does not believe the statement to be true. 17-A M.R.S. § 451(1)(A). To support a perjury conviction, the falsity of the defendant's statements must be proved by more than circumstantial evidence. *State v. Farrington*, 411 A.2d 396, 401 (Me. 1980). This rule, sometimes known as the "quantitative evidence rule," requires that, in addition to circumstantial evidence, there must be at least one witness who provides direct evidence of facts that render the defendant's statement false. *State v. Anthoine*, 2002 ME 22, ¶ 8, 789 A.2d 1277 (quotation marks omitted).

[¶17] David does not dispute that his statements at the OUI trial were material and that they were made under oath in an official proceeding. He contends that his perjury conviction must be vacated because the State offered no direct evidence that his testimony—that he learned Jeffrey was off the road and that Jeffrey asked him to call a tow truck during their conversation at 10:59 a.m., and that his roommate's phone was used to call 4-1-1 and the towing company sometime between 10:59 a.m. and 12:03 p.m.—was false.

8

[¶18]   Contrary to David's contention, the State did present direct evidence that David's roommate's phone was not, in fact, used to call 4-1-1 and the towing company sometime between 10:59 a.m. and 12:03 p.m.   The Verizon employee's testimony from the billing records that David's roommate's phone was used to dial 4-1-1 at 12:06 p.m. directly contradicted David's testimony about the timing of the calls to 4-1-1 and the towing company, and rendered David's statement of the facts untrue.   The Verizon employee's testimony regarding the timing of the calls was corroborated by the (1) testimony of an individual who observed a large vehicle go off the road near mile marker 204 and then immediately called 9-1-1, (2) testimony of the 9-1-1 dispatcher who received that individual's call at 12:01 p.m., and (3) testimony of a police officer who saw a Cadillac go off the road near mile marker 204 at 12:05 p.m.   Taken together, this evidence supports the inference that Jeffrey's Cadillac did not go off the road until sometime around noon, that Jeffrey did not ask David to call a tow truck until after that time, and that David's roommate's phone was not, in fact, used to call 4-1-1 or the towing company before 12:03 p.m.

[¶19]   The State presented both direct and circumstantial evidence of at least one of its specific allegations—i.e. that David's testimony that his roommate's phone was used to call 4-1-1 and the towing company sometime between 10:59 a.m. and 12:03 p.m. was false.   Because the State presented proof of the

elements of perjury with respect to David's testimony about the timing of the calls to 4-1-1 and the towing company, and because we must view this evidence in the light most favorable to the State, we conclude that there was sufficient evidence for the jury to find David guilty of perjury beyond a reasonable doubt.

B.    Admission of the Cell Phone Billing Records

[¶20]  David argues that the cell phone billing records should have been excluded pursuant to Maine Rule of Evidence 403.[4]  He contends that the Verizon employee was not qualified to explain the meaning of the "origination" column on the billing records, that the raw data records would have been more accurate than the billing records, and that the relevance of the billing records was therefore outweighed by their confusing, misleading, and prejudicial effects.

[¶21]  We afford trial courts wide discretion in balancing the probative value of proffered evidence against the prejudicial, misleading, or confusing effects of such evidence, and will vacate the admission of evidence over a Rule 403 objection only if the trial court clearly abused its discretion. *Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶ 29, 742 A.2d 482.

[¶22]  Here, the cell phone billing records had substantial probative value because they tended to prove the State's allegation that David's testimony at the

---

[4]  Maine Rule of Evidence 403 provides in relevant part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

OUI trial was false. Although the billing records were damaging to David's case, they were not unfairly prejudicial because they were not likely to cause the jury to make findings based on something other than the facts of the case. *See Camp Takajo, Inc. v. SimplexGrinnell, L.P.*, 2008 ME 153, ¶ 14, 957 A.2d 68. Furthermore, although the meaning of the "origination" column on the billing records may have been unclear standing alone, the column's import was clarified by the Verizon employee's explanation of its significance for billing purposes and by the defense expert's explanation of its shortcomings for technological purposes.

[¶23] Because the billing records had substantial probative value, were unlikely to cause the jury to decide on an improper basis, and were the subject of extensive custodial and expert testimony, the court did not abuse its discretion in admitting them over David's Rule 403 objection.

The entry is:

Judgment affirmed.

**On the briefs:**

Joseph P. Belisle, Esq., Bangor, for appellant David M. Wyman

R. Christopher Almy, District Attorney, and Tracy Collins Lacher, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

**At oral argument:**

Joseph P. Belisle, Esq., for appellant David M. Wyman

Tracy Collins, Asst. Dist. Atty., for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2012-3788
FOR CLERK REFERENCE ONLY